## A09A0017. RATANA v. THE STATE.
(678 SE2d 193)

PHIPPS, Judge.

Soupasith Ratana appeals his convictions of aggravated assault and possession of a firearm during the commission of that felony. Among other things, he challenges the sufficiency of the evidence to support his convictions. Finding merit in his challenge, we reverse.

Ratana, along with Deanthony Hicks, were jointly charged with the murder of Michael Howard, aggravated assault upon Howard by shooting him with a handgun, aggravated assaults upon Quantavious Barry by striking and shooting at him with a handgun, and possession of a firearm during the commission of the aggravated assaults.

At Ratana's and Hicks's joint trial, the jury found Hicks guilty of murder and aggravated assault upon Howard and of possession of a firearm during the commission of the aggravated assault but not guilty of the aggravated assaults upon Barry. The jury found Ratana guilty of the aggravated assault upon Howard and of possession of a firearm during the commission of that assault but not guilty of the remaining charges.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* . . . , and does not

---

[9] See generally *Ledford v. Darter*, 260 Ga. App. 585, 589 (2) (580 SE2d 317) (2003), citing OCGA § 9-11-56 (e).

YALE LAW LIBRARY

weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[1]

The evidence here, construed in the light most favorable to the verdict, showed that a group of older teenagers had a habit of congregating at a cul-de-sac in Lake Royale Subdivision in College Park. On the night in question, the victims named in the indictment, Howard and Barry, arrived at the cul-de-sac in Howard's car. Other persons there included Howard's girlfriend, Tierra Vinson, as well as the defendants Ratana and Hicks.

According to eyewitnesses, Howard and Vinson got into a verbal argument that escalated into a physical altercation, whereupon Hicks intervened by accosting Howard with a handgun. Howard fled behind a nearby house. Hicks gave chase while firing the handgun at Howard. Howard's body was later recovered from a nearby wooded area. After he shot Howard, Hicks left the scene in a car driven by Ratana.

Prior to the altercation between Howard and Vinson, Hicks had been seen sitting in Ratana's car. One of the eyewitnesses testified that after the shooting, "a car pulled out and [the passenger] yelled . . . sorry, ma'am." The prosecutor then asked the witness, "[H]ad the car at that point turned around? Was it facing [the house behind which the two men had run] or was it facing the outside of the cul-de-sac." The witness responded that "it was turned around. The front end of the car was pointing in the direction going out." When the prosecutor thereupon asked the witness whether she had seen the car turn around, she responded no.

Ratana was later arrested at his place of employment in the Southlake Mall. After Ratana was arrested at the mall, Hicks's mother appeared on the scene and attempted unsuccessfully to speak with Ratana. In the back seat of Ratana's car, police found a box of bullets. The bullets were the same caliber as those fired from the weapon that killed Howard.

"Pursuant to OCGA § 16-2-21, any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was

---

[1] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

committed and that he was a party thereto."[2] "Under OCGA § 16-2-20 (a), every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[3] Under OCGA § 16-2-20 (b) "[a] person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime."[4]

"A common criminal intent must be proven to establish that one is a party to a crime."[5] "While it is true that mere presence at the scene of a crime is insufficient to convict one of being a party to the crime,"[6] "[e]vidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act."[7]

> If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.[8]

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[9]

The state argues that Ratana's challenge to the sufficiency of the evidence should be rejected under the authority of cases such as

---

[2] *Head v. State*, 261 Ga. App. 185, 186-187 (1) (582 SE2d 164) (2003) (punctuation omitted).

[3] *Yancey v. State*, 281 Ga. 664, 665 (1) (641 SE2d 524) (2007) (punctuation and footnote omitted).

[4] *Hill v. State*, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007), citing OCGA § 16-2-20 (b) (citations and punctuation omitted).

[5] *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000) (citation omitted).

[6] *Millender v. State*, 286 Ga. App. 331, 332 (1) (648 SE2d 777) (2007) (citation and punctuation omitted).

[7] *Jordan v. State*, supra (citations omitted); see OCGA § 16-2-6.

[8] *Head v. State*, supra at 187 (citation and punctuation omitted).

[9] OCGA § 24-4-6; *Smith v. State*, 188 Ga. App. 415, 416-417 (1) (373 SE2d 97) (1988) (punctuation omitted).

*Jackson v. State*,[10] *Head v. State*,[11] and *Parnell v. State*.[12] In *Jackson*, the defendant accompanied the triggerman to the scene of a shooting after having twice cased the scene in a car they had stolen, and the defendant waited in the car as he watched the triggerman exit the vehicle and approach and fatally shoot the victim. The evidence in *Head* showed that on one occasion, the defendant drove with her husband to the crime scene knowing of his intent to commit a crime and then drove the car away from the scene knowing he had committed the crime; and that, on another occasion, she acted as a distraction on the scene before her husband committed the crime and then drove the getaway car from the scene. The evidence in *Parnell* showed that the defendant drove his two co-defendants to the victim's home knowing their criminal purpose in going there and then drove them away after waiting in the car while they entered her home and committed the crimes.

*Jackson*, *Head*, and *Parnell* are distinguishable from this case. Here, there is no evidence that Hicks arrived on the scene with the intent to assault or murder Howard. And although the state argues otherwise, there is no evidence that Ratana drove Hicks to the scene or that Ratana did anything on the scene to advise or encourage Hicks to commit the crimes. Ratana's possession of a box of bullets of the same caliber as those used in the murder weapon in no way proves his possession of the weapon during the commission of the assault upon Howard.

The evidence here is sufficient to show that Ratana drove Hicks away from the scene in Ratana's car. The evidence would also appear to be sufficient to show that Ratana did so with knowledge that Hicks had shot or shot at Howard at the scene. But driving a criminal perpetrator away from a crime scene with knowledge that he has committed the crime does not, in and of itself, render one guilty as a party to the crime (although it could result in criminal liability as an accomplice after the fact at common law).[13] "[S]uch an offender is not considered a party to the crime under OCGA § 16-2-20."[14] We find no merit in the state's argument that the jury could have found that Ratana aided and abetted Hicks in his commission of the crimes, based on evidence that he parked his car in a get-away position to exit the cul-de-sac in order to facilitate Hicks's escape. The evidence in that regard showed nothing more than that Ratana's car, at some point, had been parked with its front end facing in the direction

---

[10] 274 Ga. App. 279 (617 SE2d 249) (2005).

[11] Supra.

[12] 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

[13] See generally *Moore v. State*, 240 Ga. 210, 211-212 (1) (240 SE2d 68) (1977).

[14] *DeVine v. State*, 229 Ga. App. 346, 349 (1) (494 SE2d 87) (1997).

going out of the subdivision. To the extent that evidence constitutes circumstantial evidence of guilt, it simply does not exclude every other reasonable hypothesis.[15] Ratana's remaining enumerations of error are moot.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED MAY 12, 2009.

*Stuart M. Mones*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.

---

[15] See also *Smith v. State*, supra.