A11A0127. HUGHES v. THE STATE.
(709 SE2d 900)

ELLINGTON, Chief Judge.

A Richmond County jury found Christopher Hughes guilty beyond a reasonable doubt of trafficking in methamphetamine, OCGA § 16-13-31 (f) (1). He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his conviction and that the trial court erred in instructing the jury. We affirm.

1. Hughes argues that the evidence was insufficient to show that he knowingly manufactured methamphetamine, as alleged in the indictment. According to Hughes, the circumstantial evidence showed, at most, that he was a drug user, not a manufacturer, and that he was in constructive possession of methamphetamine. Further, he argues that the evidence presented failed to exclude the reasonable possibility that he was merely present in a house where methamphetamine had, at some point, been produced.

---

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

On August 15, 2008, narcotics investigators and other officers from the Richmond County Sheriff's Office entered a house located at 1925 Telfair Street, Augusta, in order to execute a search warrant as part of an ongoing drug investigation. The investigation specifically targeted the defendant, Christopher Hughes, and Tammy Strickland, his co-defendant in this case. Upon entering the house, the investigators saw Hughes "curled up" on a couch with Strickland.[1] An investigator handcuffed both Hughes and Strickland for their safety and that of the officers and to prevent the destruction of evidence, and the other officers conducted the search.[2] Next to the couch was a coffee table on which there was, in plain view, a clear plastic baggie with one corner cut off and containing a white powder residue, a razor blade, a straw, and a glass pipe that was severely burned on the outside and that had a "pretty thick" layer of suspected methamphetamine residue inside, indicating extensive use. In addition, on the table there was a small, black leather bag that contained six plastic baggies of suspected methamphetamine, as well as a folded piece of paper that contained several hundred dollars in cash. During the search, officers also found a pill bottle in Strickland's purse that contained a baggie of suspected methamphetamine. A chemist employed by the state's crime laboratory determined that the drugs were methamphetamine and weighed a total of 4.25 grams. The chemist also testified that the appearance of the drugs was "very typical" of methamphetamine that is produced

---

[1] The only other people in the house besides Hughes and Strickland were three men doing construction work on the back of the house; the officers briefly detained and questioned the men before determining that they were not residents of the house and were not involved in the suspected drug activity.

[2] A videotape and photographs documenting the search and seizure were admitted into evidence and published to the jury.

illicitly by individuals in their homes.

Moreover, the investigators testified that, about five feet from where the co-defendants were seated, there was an open door which immediately led to a room that was approximately the size of a large, walk-in closet. According to one of the investigators, who had extensive training and experience dealing with clandestine laboratories that are used to produce methamphetamine, or "meth labs," the room was outfitted with the equipment and chemicals needed to create methamphetamine. In fact, he discovered a bottle containing a liquid that is produced during the final stages of methamphetamine production, as well as a Styrofoam cup that, when uncovered, released smoke, indicating that it was holding acid, which is necessary during the middle stage of producing methamphetamine.

The investigator also testified that the process of producing methamphetamine creates an "overwhelming chemical smell," that there was a "very, very heavy" chemical smell inside the house, and that it was noticeable as soon as he entered the house. Because of the smell, anyone in the house "would have to know" that there was a meth lab inside.

In addition to this evidence, the State showed that, when Hughes was taken into custody, he told the investigators that his address was "1925 Telfair Street" in Augusta, which was the same address as the house at issue. The State also showed an August 2008 electric bill that was addressed to Hughes at that address, Hughes' wallet, and his driver's license were all found in the house. One of the investigators also testified that he had conducted surveillance in the weeks leading to the execution of the search warrant, that he often saw the co-defendants leave and return to the house together, sometimes carrying bags, and that he observed numerous cars drive to the back of the house, stay for no more than two minutes, and then leave.

In contrast to this evidence, the defense presented two witnesses, both of whom testified that Hughes did not live at 1925 Telfair Street in August 2008, and one of whom testified that Hughes lived with her at her home from May through August 2008 and was with her almost constantly — including on the day the investigators executed the search warrant.

The trial court subsequently instructed the jury on, inter alia, the essential elements of the crime charged, the State's burden of proof, circumstantial evidence, mere presence, actual and constructive possession, party to a crime, the rebuttable presumption regarding possession of property, and the lesser-included offenses of possession and possession with intent to distribute methamphetamine. Hughes' counsel stated affirmatively that he had no objection to the

jury instructions.[3] The jury found both Hughes and Strickland guilty beyond a reasonable doubt of trafficking in methamphetamine.

As noted above, Hughes argues on appeal that the evidence was purely circumstantial and that it failed to exclude the possibility that, at the time the search warrant was executed, he was simply a drug user who was sitting in someone else's house next to drugs and drug paraphernalia lying in plain sight while a very heavy chemical odor surrounded him, yet lacking any knowledge that there was a fully-equipped, open and visible meth lab in the next room.

It is the function of the jury, however, not this Court to weigh the evidence, judge the credibility of the witnesses, and resolve conflicts in the evidence. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B). "[T]he resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation omitted.) *Brooks v. State*, 281 Ga. 514, 516 (1) (640 SE2d 280) (2007).

As for Hughes' argument that the circumstantial evidence was insufficient, he is correct that, under OCGA § 24-4-6, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The circumstantial evidence, however, "does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. Whether a hypothesis is reasonable is a question for the jury, and such finding will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law." (Citations omitted; emphasis in original.) *Eberhart v. State*, 241 Ga. App. 164, 165 (1) (526 SE2d 361) (1999).

Given the evidence presented in this case, the jury was authorized to find that Hughes was guilty beyond a reasonable doubt, as either the actual perpetrator or as a party to the crime, of the offense of trafficking in methamphetamine as charged in the indictment. See *Herberman v. State*, 287 Ga. App. 635, 637-639 (1) (653 SE2d 74) (2007). Because Hughes has failed to show that the guilty verdict was insupportable as a matter of law, it is affirmed.

2. Hughes contends that the trial court erred in instructing the jury that their verdict should not be influenced by sympathy or prejudice.[4] He argues that the charge was not authorized by the evidence and that it improperly called attention to the "scourge" of

---

[3] See Division 2, infra.

[4] Specifically, the trial court charged the jury that the law does not permit jurors, in reaching a verdict, "to be governed by sympathy or prejudice. [Jurors] may not, therefore, render a verdict in this case based upon sympathy for either party or prejudice against either party. Any verdict [the jury] . . . return[s] must be supported by evidence produced at trial without in any way being affected by either sympathy or prejudice."

154

methamphetamine addiction and the "insidious danger" presented by clandestine meth labs located in unsuspecting communities.

The trial transcript shows, however, that, after the court charged the jury, Hughes' counsel affirmatively stated that he had no objection to the jury instructions as given. See OCGA § 17-8-58 (a) ("Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."); *Blankenship v. State*, 301 Ga. App. 602, 606 (4) (688 SE2d 395) (2009) (The defendant waived his objections to the jury instructions when he specifically stated that he had no objections to the charge as given.). Further, although Strickland's counsel timely and specifically objected to the instruction, Hughes' counsel did not join in the objection, nor did his counsel raise the objection when given another opportunity to do so before the jury returned its verdict. See *Maxwell v. State*, 267 Ga. App. 227, 229 (3) (599 SE2d 228) (2004) ("[I]t is well established that an issue raised by a co-defendant at trial does not preserve the issue for another co-defendant who does not join in the objection.") (footnote omitted).

Therefore, Hughes waived his objection to the instruction at issue unless giving the instruction constituted "plain error," in other words, there was "a substantial error in the charge which was harmful as a matter of law, depriving the defendant of a fair trial[.]" (Footnote omitted.) *Leverette v. State*, 303 Ga. App. 849, 851 (2) (696 SE2d 62) (2010). See also OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").

Pretermitting whether the instruction at issue was a correct statement of the law that was supported by evidence or whether the trial court otherwise erred in giving the charge,

> the standard for weighing nonconstitutional error in criminal cases is known as the "highly probable test," i.e., that it is highly probable that the error did not contribute to the judgment. Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict would have been different in the absence of this error.

(Punctuation and footnote omitted.) *Leverette v. State*, 303 Ga. App. at 852 (2).

Given the overwhelming evidence supporting Hughes' conviction and the comprehensive jury charge given by the trial court, as

discussed in Division 1, supra, we conclude that there is no reasonable probability that the jury's verdict would have been different if the trial court had not given the instruction at issue. Id. Consequently, this alleged error presents no basis for reversing Hughes' conviction.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED APRIL 6, 2011.

*Peter D. Johnson,* for appellant.

*Ashley Wright, District Attorney, Dana E. Wolk, Assistant District Attorney,* for appellee.