**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 26, 2013**

# In the Court of Appeals of Georgia

A13A0118. FRANKS v. THE STATE.
A13A0932. LONG v. THE STATE.

McMILLIAN, Judge.

Co-defendants Charles Randall Franks ("Franks") and Richard Clayton Long ("Long") appeal following the denial of their motions for new trial after they were each convicted of one count of attempted trafficking by manufacturing methamphetamine.[1] As his sole enumeration of error on appeal, Franks challenges the sufficiency of the evidence to support his conviction. Long also asserts that the evidence was insufficient to support his conviction and further argues that the trial court erred in failing to give his requested charges on the lesser included offenses of possession of a drug-related object and unlawful possession of pseudoephedrine.

---

[1] Franks and Long were indicted jointly for trafficking by manufacturing methamphetamine, but the jury convicted them of the lesser included offense.

Viewed in the light most favorable to the verdict,[2] the evidence demonstrates that on or about June 4, 2010, Detective John Helton of the Dalton Police Department was investigating a report that someone had shoplifted rat poison from a grocery store. That investigation led Helton to the home of Franks' brother, Allen. Franks arrived while Helton was talking with his brother. The Franks brothers denied any knowledge of the shoplifting incident, but Franks indicated that Long might have been involved.

Franks then escorted Helton to the nearby house where Franks said Long and he lived. Helton said that Franks hurried to get ahead of him and appeared a little fidgety and nervous. Helton also noticed that Franks appeared to have some difficulty walking, and he later discovered that Franks had recently suffered a burn on his lower left side. The injury was severe enough to require a trip to the emergency room. Franks said he was burned when a Coleman camping lantern exploded. When they got close to the house, Franks yelled to Long that he was there and he had the police with him. After speaking with Helton about the reported shoplifting, Long gave Helton consent to search the house.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Long did not own the house, but the owner allowed Long to stay there. He had been living there for about a year. The house was in poor condition. With the exception of one bedroom that was enclosed with paneling, the house had few finished interior walls, and it had no electricity or running water. The living room contained what appeared to be a fire pit where someone had cut a hole in the floor and placed rocks in it. Long had boarded up all the doors except one, which could be locked from the inside.

During the search, Helton observed a number of items in the bedroom that he believed related to a methamphetamine manufacturing lab ("meth lab"), including blister packs containing what appeared to be pseudoephedrine tablets, syringes, bottles containing tri-level liquids, jars and canisters with tubing running out of them, and an open container with a "mashed-up" substance and a potato masher inside. Helton then placed Long and Franks under arrest and notified the drug unit.

Detectives Dwayne Holmes and Shannon Ramsey of the Whitfield County Sheriff's Office narcotics unit assisted the Dalton Police Department in investigating the reported meth lab at Long's house. Both had special training and experience in the detection and dismantling of meth labs. When they arrived at the house, the officers noticed a chemical odor that, based upon their training and experience, they

associated with a meth lab. After obtaining a search warrant, several officers on the scene, including Holmes, donned protective clothing and respirators and began removing items from the house, while Ramsey stayed outside to catalogue the items seized.

The detectives removed a number of items from the bedroom and living room area of the home that they found to be consistent with items typically found in meth labs. These items included:

–    bi-level and tri-level liquids in various bottles and jars, including Mason jars;[3]

–    containers of a red liquid that appeared to be red phosphorous, a chemical used in the manufacture of methamphetamine;[4]

---

[3] Although these liquids tested negative for methamphetamine and ephedrine, a pH test indicated that the liquids were very basic, and the GBI chemist from the state crime lab testified that the liquids could have been used for extracting the methamphetamine during the manufacturing process.

[4] The red liquid and paste was never tested because the GBI crime lab refuses, as a matter of safety, to accept certain substances used in meth labs, including red phosphorous, iodine and lithium batteries.

- a plastic bowl containing a metal potato masher, strainer, and a reddish paste substance suspected of being red phosphorous;

- plastic bottles cut in half and containing a white powdery substance;

- a bug sprayer altered to act as a gas generator;

- canisters of Coleman fuel, which is used as a solvent to remove ephedrine from pseudoephedrine[5] during the manufacturing process;

- coffee filters, which are often used to filter ephedrine from the soaking solution;

- several spoons with powdery residue, one of which tested positive for methamphetamine; and

- a hollowed-out light bulb, taken from a jacket pocket in the bedroom, fashioned as a smoking device with residue that tested positive for methamphetamine, as well as ephedrine and/or pseudoephedrine.

---

[5] These drugs are precursors to methamphetamine in the manufacturing process.

5

The State tendered Ray Grossman, Chief of Police of Cohutta, Georgia, as an expert in methamphetamine production and methamphetamine-related products, and the court qualified him without objection. Grossman testified that he had worked approximately 200 red phosphorous meth labs. And during special training he received from the Drug Enforcement Administration and the State, he was required to manufacture methamphetamine using the red phosphorous method. He identified the items seized as components of "an average meth lab," and he said that these items could not be anything else but a meth lab. He explained in detail how each of the components were used in the manufacturing process. Grossman testified from his review of the crime scene photographs that the meth lab at Long's house was "inactive," i. e., the methamphetamine had already been "cooked off" leaving only "remnants." Grossman stated that in his experience it was not unusual to find components of a lab dispersed after the manufacturing process is complete. Moreover, Grossman stated that electricity was not required for a meth lab; a portable heating device, such as a Coleman camp stove, would be sufficient. He also said that it was not unusual for the smell of methamphetamine to linger after the manufacturing process is complete.

1. Franks argues that this evidence was insufficient to support his conviction for attempted trafficking by manufacturing methamphetamine. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the [S]tate's case, this Court will uphold the jury's verdict.

(Citations omitted.) *Gentry v. State*, 281 Ga. App. 315, 319 (2) (635 SE2d 782) (2006).

Under OCGA § 16-13-31 (f), "[a]ny person who knowingly manufactures methamphetamine, . . . or any mixture containing . . . methamphetamine . . . in violation of this article commits the felony offense of trafficking methamphetamine. " The term "manufacture" is defined in pertinent part as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or

7

independently by means of chemical synthesis . . . ." OCGA § 16-13-21 (15). And "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1.

Franks argues that the evidence was insufficient to prove that they lived at the house and argues that their "mere presence" is not sufficient to support his conviction. He also asserts that the evidence did not establish beyond a reasonable doubt that he took any substantial step toward manufacturing methamphetamine, as required for a conviction for criminal attempt.

"Mere presence, without proof of participation, is insufficient to support a conviction." (Citation omitted.) *Sherrer v. State*, 289 Ga. App. 156, 159 (2) (656 SE2d 258) (2008). Rather, the State was required to show that Franks had the power and intent to exercise control over the meth lab components. Id.

> [E]vidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense . . . . Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is *primarily a question for determination by the jury.*

(Citations omitted; emphasis in original.) *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008).

Moreover, "[a]n act constituting a 'substantial step' is one done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation." (Citation and punctuation omitted.) *Taylor v. State* __ Ga. App. __ (1) (740 SE2d 327) (2013). Nevertheless, it cannot "accurately be said that no preparations can amount to an attempt. The question, then, is one of degree, depending upon the circumstances of each case." (Citation omitted.) *Rainey v. State*, 319 Ga. App. 858, 859 (1) (a) (738 SE2d 685) (2013).

Although someone else owned the house and no evidence existed that either Long or Franks had signed a formal lease, the owner testified that he allowed Long to stay there, and if Long let other people stay there, "that was his business." Franks told Helton that he lived in the house with Long, and Long's ex-wife testified that Franks and Long lived there at the time of their arrest. She even identified the individual beds in the bedroom where they slept. This evidence was sufficient to connect Franks and Long to the house and the rooms in which the manufacturing components and the items containing methamphetamine residue were found.

9

The evidence also showed that Franks appeared nervous around Helton and supported an inference that he rushed ahead to alert Long to the officer's presence. Moreover, Grossman testified that it was not uncommon for flash fires to occur in the methamphetamine manufacturing process, and Franks had suffered a serious burn a few days earlier. Although Franks attributed his injury to a Coleman lantern explosion, police found Coleman fuel in the house, and the evidence showed that it was commonly used as a solvent in meth labs. We find that this evidence, although circumstantial, was sufficient to support a finding that Franks and Long shared joint constructive possession of the items seized. *Clyde v. State*, 298 Ga. App. 283, 285 (1) (680 SE2d 146) (2009); *Espinoza v. State*, 244 Ga. App. 96, 99 (5) (534 SE2d 824) (2000); *Wilson v. State*, 231 Ga. App. 525, 526 (1) (499 SE2d 911) (1998). Here, Long and Franks were charged with trafficking by knowingly manufacturing a mixture containing less than 200 grams of methamphetamine. Grossman testified that the items seized appeared to have been used in the red phosphorous process for manufacturing methamphetamine.[6] He said the process was complete and the lab disassembled, and the jury could have found that the items seized evidenced various

---

[6] Grossman acknowledged, however, that the manufacturing process will not always successfully result in the production of methamphetamine.

10

steps in the manufacturing process. For example, a bug sprayer had been converted into a gas generator and the hose leading from it was stained red, probably from contact with red phosphorous or iodine according to Grossman; liquids had been poured together and had apparently separated again into various levels; a paste containing what appeared to be red phosphorous was created; plastic jugs contained residue and one appeared melted; and another had been converted into a funnel. A chemical odor associated with meth labs lingered around the house and methamphetamine residue was found on a spoon and the light bulb smoking device near the meth lab components.

We find that this and the other evidence at trial was sufficient to support a jury finding that Franks and Long had taken a substantial step toward manufacturing methamphetamine. See *Womble v. State*, 290 Ga. App. 768, 770-771 (2) (660 SE2d 848) (2008) (processing and possession of methamphetamine oil constituted substantial step toward commission of manufacturing methamphetamine); *Drammeh v. State*, 285 Ga. App. 545, 547-548 (1) (646 SE2d 742) (2007) (circumstantial evidence sufficient to establish substantial step toward attempted marijuana trafficking where defendant merely entered a car containing large quantity of marijuana that would have been detectable from its odor and defendant refused to

provide information to police). Compare *Thurman v. State*, 295 Ga. App. 616, 618 (1) (673 SE2d 1) (2008) (physical precedent only) (reversing conviction for criminal attempt where defendants charged with attempting to manufacture methamphetamine in the future and during a traffic stop of defendants' car, police smelled odor associated with meth labs and search of car revealed only an unopened bottle of Heet, one pack of cold pills containing pseudoephedrine, a large unopened bottle of iodine, and some plastic tubing).

Accordingly, the evidence was sufficient to support Franks' conviction beyond a reasonable doubt.

*Case No. A13A0932*

2. We find Long's assertion that the evidence was insufficient to support his conviction to be meritless for the reasons set forth in Division 1 above.

3. Long further asserts that the trial court erred at trial in denying his written requests to charge on the lesser included offenses of possession of a drug-related object and possession of pseudoephedrine, and thus that it erred in denying his motion for new trial on this ground. In its order denying Long's motion, the trial court acknowledged that these crimes were lesser included offenses, and that "it was error for the court to fail to give the charges requested by [Long]," but the court determined

12

that its error was harmless. While we agree that it was error for the trial court to fail to give the requested charges, we cannot say that the error was harmless in this case, and thus we find that Long is entitled to a new trial.[7]

> The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, *no matter how slight*, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.

(Citation omitted; emphasis omitted and supplied.) *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).

---

[7] We do not address this issue as it applies to Franks because he did not assert it as error on appeal. We note that Franks did not submit written requests to charge on these lesser included offenses, but his trial attorney excepted to the trial court's failure to give the charge on possession of drug-related objects as requested by Long. Pretermitting whether this would have been sufficient to preserve the issue for appeal, we nevertheless would have been required to review the failure to charge on these offenses for plain error if Franks had raised the issue on appeal. *State v. Kelly*, 290 Ga. 29, 32 (2) (a), n. 2 (718 SE2d 232) (2011). But "even in 'plain error' review, [our appellate courts] require that "an appealing party properly assert( ) an error. [Cit.]" *Moore v. State*, 290 Ga. 805, 808 (2), n. 3 (725 SE2d 290) (2012). See also Court of Appeals Rules 22 and 25 (regarding enumeration of errors and argument and authority). Accordingly, Franks must seek relief through a habeas corpus proceeding.

13

In determining whether one crime is a lesser included offense of another crime, we apply the "required evidence" test set out in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). See *Stuart v. State*, 318 Ga. App. 839, 842-843 (734 SE2d 814) (2012) (required evidence test applicable in determining whether jury charge on lesser included offense required). "Under the 'required evidence' test, the question is not whether the evidence actually presented at trial establishes the elements of the lesser crime, but whether each offense requires proof of a fact which the other does not." (Citation omitted.) Id. at 841.

OCGA § 16-13-31 (f) requires proof that a defendant knowingly manufactured methamphetamine. In order to knowingly manufacture methamphetamine, we find that a defendant must necessarily possess the ingredients and tools required for the manufacturing process and have the intent to use them. Here, the State presented evidence that Long possessed pseudoephedrine and a number of objects required for the manufacture of methamphetamine. And as the trial court succinctly described the other two offenses,

[i]t is a crime, per OCGA § 16-13-32.2[8] to possess any object with the intent to manufacture a controlled substance such as methamphetamine. . . . Likewise, it is a crime pursuant to OCGA § 16-13-30.3[9] to possess pseudoephedrine with intent to manufacture methamphetamine.

Under the facts in this case, therefore, the trafficking statute required proof of an element that the other two statutes do not – the manufacture of methamphetamine. But the other two statutes do not require proof of any element that is not also required for the crime of trafficking as charged in this case.

Accordingly, we agree with the trial court that, based upon the evidence here, the crimes set forth in OCGA §§ 16-13-30.3 (b) (2) and 16-13-32.2 are lesser included offenses of the crime of trafficking by manufacture of methamphetamine under OCGA § 16-13-31 (f). See *Preval v. State*, 302 Ga. App. 785, 790 (3) (692 SE2d 51) (2010) (charges of trafficking by possession of more than ten pounds of marijuana and manufacturing marijuana merged "because both counts arose from the

---

[8] OCGA § 16-13-32.2 (a), provides, in relevant part, that it is unlawful "for any person to use, or possess with the intent to use, any object or materials of any kind for the purpose of . . . manufacturing, compounding, converting, producing, processing, preparing . . . a controlled substance."

[9] OCGA § 16-13-30.3 (b) (2) makes it unlawful to possess "any amount" of pseudoephedrine with the intent to manufacture methamphetamine.

same set of facts, and each provision does not require proof of a fact which the other does not") (citations omitted.). Cf. *Womble v. State*, 290 Ga. App. at 771 (3) (holding under actual evidence test that convictions for possession of methamphetamine and criminal attempt to manufacture methamphetamine merged as a matter of fact where charges were based on the same conduct in processing and possessing the same methamphetamine oil). Compare *Galbreath v. State*, 213 Ga. App. 80 (443 SE2d 664) (1994) (holding under the pre-*Drinkard* "actual evidence" test that possession of marijuana was not a necessary element of the crime of growing marijuana).

The trial court nevertheless determined that its failure to give the requested charges on the lesser included offenses was not harmful error because that failure did not contribute to the verdict. It concluded that the jury could not have found Long guilty of illegal possession of pseudoephedrine or possession of drug-related objects unless it found him guilty of either trafficking by manufacturing methamphetamine or attempted trafficking by manufacturing methamphetamine. See *Poole v. State*, 302 Ga. App. 464, 466 (1) (691 SE2d 317) (2010). We disagree.

In *Poole*, this Court concluded that the trial court should have charged the jury on the crime of manufacturing methamphetamine under OCGA § 16-13-30 (b) as a lesser included offense of trafficking by manufacturing methamphetamine under

OCGA § 16-13-31 (f) but found that the failure to do so was harmless error. Id. Because the evidence "clearly established" that Poole had manufactured methamphetamine and he admitted to police that he had been "cooking," which demonstrated that he had knowingly done so, the Court reasoned that "the jury [only] could have found Poole guilty of both offenses or not guilty of both." Id.[10] See also *Edwards*, 264 Ga. at 133 (failure to charge lesser included offense was harmless given overwhelming evidence of guilt); *Celestin v. State*, 296 Ga. App. 727, 738 (5) (675 SE2d 480) (2009) (same); *Swanger v. State*, 251 Ga. App. 182, 186 (2) (554 SE2d 207) (2001) (same).

In this case, although the evidence was sufficient to submit the charge of trafficking by manufacturing methamphetamine to the jury, the evidence was not overwhelming as shown by the jury's acquittal of Long and Franks of that charge. Moreover, our review of the record shows that even though Grossman testified that the items found indicated that the manufacturing process had been completed, other evidence in the record indicated that the process may not yet have occurred. Detective Ramsey testified that with the state of the bi-level liquids, he would "imagine" that

---

[10] We further note that this Court limited its holding in *Poole* to the two particular code sections at issue there. *Poole*, 302 Ga. App. at 466-467 (1).

17

they had confiscated the items before the methamphetamine had been cooked. And, in fact, a number of materials and items required for the red phosphorous method of manufacture were not found in the house, such as muriatic acid, aluminum foil, matches, or a heat source. Further, none of the samples of the bi-level or tri-level liquids sent to the crime lab tested positive for ephedrine or methamphetamine, supporting the inference that they had not yet been used in the manufacturing process. Additionally, the State, either due to safety concerns or by choice, did not take test samples from a number of the items seized to determine whether they had residue indicating that a manufacturing process had occurred. For example, even though Grossman testified that he would classify the bug sprayer/gas generator as a drug-related object for making methamphetamine, and he indicated that the staining on the tubing suggested contact with phosphorous or iodine, no tests were run on the tubing or the interior to confirm his conclusion that the device had been used.

Because the evidence was not overwhelming as to the charge of trafficking by manufacturing methamphetamine, we cannot say that it was harmless error for the trial court to refuse to instruct the jury on the lesser included offenses requested by Long. Accordingly, we reverse Long's conviction. See *Johnson v. State*, 296 Ga.

18

App. 697, 699 (2) (675 SE2d 588) (2009); *Elrod v. State*, 265 Ga. App. 335, 337 (1) (593 SE2d 879) (2004).

*Judgment affirmed in Case No. A13A0118. Judgment affirmed in part and reversed in part in Case No. A13A0932. Andrews, P. J., and Dillard, J., concur.*