**WHOLE COURT**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A1755. HOGLEN v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for aggravated assault and three counts of felony obstruction, Jeremi Hoglen argues that the evidence was insufficient as to both of these crimes because he was not a party to his grandfather's act of firing a gun during Hoglen's apprehension by police executing a warrant to arrest him. We agree and reverse as to the aggravated assault charge, but we affirm Hoglen's conviction for felony obstruction. We therefore vacate his sentence and remand for resentencing.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but

determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that before sunrise on the morning of September 14, 2004, three uniformed deputies of the Hart County Sheriff's Department approached a white double-wide trailer where Jeremi Hoglen was living in order to investigate a report of a prowler and to arrest Hoglen on an outstanding warrant. When two of the deputies knocked and identified themselves as police, Hoglen fled out of a left back window and began running towards a barbed wire fence 15 feet from the house. The third deputy, who had stationed himself at the back of the house, saw Hoglen jump out of the window, gave chase, and ordered him to stop running. Hoglen climbed over the fence and ran down a hill past a red barn to a woodpile. When Hoglen tripped near the woodpile, the third deputy, who had followed him over the fence, tried to secure Hoglen's hands, but Hoglen stuffed them under his belt. With the help of the first and second deputies, who had run to the woodpile without clearing the trailer, Hoglen's hands were soon secured.

As Hoglen was apprehended, he began screaming, "Paw Paw, they're killing me," and "They are beating my ass." The three deputies began to escort Hoglen back up the hill to the fence and the trailer, but Hoglen soon refused to walk. When a woman in the trailer asked what was happening, the deputies responded that they were sheriff's officers making an arrest. As Hoglen continued to scream that "they" were "killing," "beating" and "hurting" him, a shot rang out. At this, Hoglen screamed even more loudly that he was being harmed and also added, "Over here, over here[!]" On hearing the shot, which seemed to have come from the trailer, one of the deputies called out, "Shots fired." The officers extinguished their flashlights so as not to be targeted by the shooter. One of the officers used his hand to cover Hoglen's mouth "because [Hoglen] was giving away our location."

As the deputies continued their efforts to silence Hoglen in what was still pitch darkness, they took cover behind an oak tree. For up to twenty minutes, the deputies called for assistance from nearby police. After some movement at the trailer, the dome light in a vehicle parked nearby came on. On hearing the vehicle start and seeing it moving towards them and the trailer, one of the deputies returned Hoglen to the trailer while the other two made a "mad dash" towards three oak trees on the other side of the trailer. With their guns drawn, the two remaining deputies stopped

the vehicle, a gold truck, which contained an older man and woman, a young woman, and a baby. The older man, Bobby Brown, told the deputies that he had shot a gun into the air because he thought that thieves were hurting Hoglen, his grandson. The deputies recovered a .38-caliber revolver from the truck. Medical personnel called to the scene determined that Hoglen had suffered only minor injuries from his flight.

Although the evidence showed that Brown fired the only shot at the scene, he and Hoglen were both arrested and charged with one count of aggravated assault, "individually and as parties concerned in the commission of a crime," in that both men assaulted the deputies "with a deadly weapon" by discharging the revolver. Hoglen was also charged with three counts of felony obstruction, one for each deputy involved in the arrest, and Brown with one count of possessing a firearm during the commission of a felony. After the trial court denied Hoglen's motion for directed verdict, he was found guilty on all four counts and sentenced to 20 years with five to serve.[1] This appeal followed.

1. Hoglen first argues that the evidence was insufficient to sustain his conviction for aggravated assault. We agree.

---

[1] Although Brown and Hoglen were charged in the same indictment, Brown was not a co-defendant at Hoglen's trial.

4

OCGA § 16-5-20 (a) (2) provides in relevant part that a person commits the offense of simple assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-21 (b) (2) provides in relevant part that a person commits an aggravated assault when he or she assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-2-20 provides in relevant part that a person not directly committing a crime is nonetheless "concerned in the commission" of that crime, and thus a party to it, "only if" he

> [i]ntentionally *causes* some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; . . . [i]ntentionally *aids or abets* in the commission of the crime; *or . . .* [i]ntentionally *advises, encourages, hires, counsels, or procures* another to commit the crime.

(Emphasis supplied.) Although "mere presence" at the scene of a crime is insufficient to find a person guilty of that crime,

> evidence of a defendant's conduct prior to, during, and after the commission of a crime will authorize the defendant's conviction for commission of the criminal act [only] *if a jury could infer from the*

5

*conduct that the defendant intentionally encouraged the commission of [that] criminal act.*

*Ratana v. State*, 297 Ga. App. 747, 749 (678 SE2d 193) (2009) (citation and footnote omitted; emphasis supplied).

The State's theory of the case is that taken together, evidence of Hoglen's cries for help before the single shot fired, as well as his exclamation "Over here!" after that shot, authorized this jury to conclude that he was a party to the aggravated assault at issue. Even if, as the dissent asserts, "Hoglen intended his grandfather to intervene in his arrest," there is no evidence in the record to show that Hoglen knew that his grandfather possessed a pistol while driving his truck to the scene, that the grandfather was likely to respond to Hoglen's initial cries for help by firing a shot, or that those cries intentionally encouraged the grandfather to discharge the single shot actually fired.[2] As to Hoglen's exclamation after the single shot, this Court has held that the act of driving a shooter away from the scene of an aggravated assault was insufficient to support a conviction under the theory that the driver was a party to that crime because there was no evidence that the defendant drove the shooter *to*

---

[2] The three officers were the only witnesses to testify for the State. After the trial court denied Hoglen's motion for directed verdict, Hoglen informed the court that he had decided not to testify, and the defense rested.

6

the scene or "did anything on the scene to advise or encourage [the shooter] to commit the crimes." *Ratana*, 297 Ga. App. at 750. We agree with the State that this jury was entitled to believe the officers' testimony that Hoglen's exclamation after the single shot placed them in reasonable apprehension of receiving a serious injury. But a second shot never came. In short, and although Hoglen's exclamation could reasonably be interpreted as an expression of encouragement or incitement, it was made *after* Brown's already completed act of firing his revolver near the officers, which is the act that forms the basis of the indictment against both Brown and Hoglen.

The absence of any evidence that Hoglen encouraged his grandfather's act before or during the single discharge of the gun distinguishes this case from *Glover v. State*, 192 Ga. App. 798 (386 SE2d 699) (1989), on which the State relies. There, a defendant told his confederate in an armed robbery to "shoot the son of a b****" before the confederate did so, and was thus found to have encouraged that crime such that the defendant could be found guilty of possession of a firearm during the commission of a felony. Id. at 798, 800 (1). The State has cited no other law, and we have found none, authorizing a jury to infer that when Hoglen called out for help, he intentionally caused, aided, or encouraged his grandfather Brown to fire the single

7

shot that put the officers in reasonable apprehension of immediately receiving a violent injury. Nor can Hoglen's exclamation "Over here!" authorize a jury to conclude that he encouraged the crime that had already occurred, just as the *Ratana* defendant could not be found guilty as a party to the crime of aggravated assault merely because he drove a shooter away from the scene of such an assault. 297 Ga. App. at 750. For all these reasons, Hoglen cannot be found to have been a party to the crime of aggravated assault, and his conviction for that crime must be reversed. Id.

2. Hoglen also argues that the evidence was insufficient to support his conviction for felony obstruction. We disagree.

The obstruction statute, OCGA § 16-10-24, provides in relevant part:

(a) Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

(b) Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties *by offering or doing violence to the person of such officer . . .* is

guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.[3]

(Emphasis supplied.) Hoglen was charged with obstructing all three of the deputies attempting to arrest him by "offering to do violence," "fighting with," and "inciting others to do violence to" each of them.

In order to sustain a conviction for felony obstruction, a record must include evidence that the defendant offered or did violence, such as punching, choking, kicking, or biting, to the arresting officers. See, e.g., *McMullen v. State*, 325 Ga. App. 757, 758 (1) (754 SE2d 798) (2014) (defendant who jumped on officer's back, choked him, and struck him twice in the face and once in the neck was guilty of felony obstruction); *Arnold v. State*, 249 Ga. App. 156, 159 (1) (b) (545 SE2d 312) (2001) (evidence was sufficient to sustain obstruction conviction where defendant grew belligerent after being placed in patrol car, began kicking window, and threatened to "pop a cap in [the officer's] ass" if he saw him again).

---

[3] The obstruction statute was amended in 1986, see Ga. L. 1986, p. 484, such that "the offense of misdemeanor obstruction under [the new statute] no longer contains the elements of 'violence' as does the offense of felony obstruction[.]" *Carter v. State*, 222 Ga. App. 397, 398 (474 SE2d 228) (1996) (citations and punctuation omitted).

Although the officers specifically declined to testify that Hoglen had been violent in resisting arrest, "[w]e have recognized that words, alone, can rise to the level of obstruction if they may reasonably be interpreted as a threat of violence *and* amount to an obstruction or hindrance." *Williams v. State*, 261 Ga. App. 511, 514 (2) (583 SE2d 172) (2003) (punctuation and footnote omitted; emphasis in original). Although "[s]peech must reasonably be interpreted as a threat of violence in order to constitute an offer of violence under OCGA § 16-10-24 (b)[, t]he interpretation of the speech is a task for the jury." *Arnold*, 249 Ga. App. at 159 (1) (b) (punctuation and footnote omitted). Here, a jury could reasonably conclude that when Hoglen cried out "Over here" immediately after the single shot fired by Brown, he was encouraging Brown to discharge his revolver for a second time at or near the officers before they had succeeded in returning to safety, and was thus offering violence to those officers. See *Jackson v. State*, 213 Ga. App. 520-521 (444 SE2d 875) (1994) (affirming conviction for felony obstruction when defendant wielded tire iron and threatened to kill officer if he did not leave defendant's brother alone). The evidence also supports the conclusion that when Hoglen shouted "Over here," the arresting deputies were forced to extinguish their flashlights so as to prevent being seen and shot by Brown, thus hindering their efforts to secure Hoglen's arrest. Compare *Williams*, 261 Ga.

10

App. at 514-515 (2) (reversing conviction for felony obstruction when no evidence showed that defendant's verbal threats obstructed police officer's completion of his law enforcement duties). Because the jury had some evidence from which it could reasonably infer that Hoglen's shouts amounted to an offer of violence on the deputies as they were engaged in their official duties, we affirm Hoglen's conviction for felony obstruction. See *Arnold*, 249 Ga. App. at 159 (1) (affirming conviction for felony obstruction where defendant under arrest began kicking police car window and threatened to shoot officer the next time he saw him).

3. Hoglen was originally sentenced to 20 years with five to serve for the aggravated assault, with the three five-year terms for three counts of felony obstruction running concurrently. In light of our reversal of Hoglen's conviction for aggravated assault and affirmance of his conviction on three counts of felony obstruction, we cannot determine how the trial court would have sentenced Hoglen on the three felony obstruction counts. We therefore vacate Hoglen's sentence and remand for resentencing in accordance with this opinion. See *Maxwell v. State*, 238 Ga. App. 197, 198 (2) (518 SE2d 432) (1999) (where appellate court vacated a mandatory minimum sentence for cocaine possession, but could not determine whether trial court would have given defendant the full five-year sentence for a

11

forgery conviction, the sentence was vacated and the case remanded for resentencing).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded for resentencing. Andrews, P. J., Barnes, P. J., Ellington, P. J., Dillard and McFadden, JJ., concur. Miller, P. J., dissents in part.*

A15A1755. HOGLEN v. THE STATE.


MILLER, Presiding Judge, dissenting in part.

I respectfully disagree with the majority opinion's conclusion that the evidence was insufficient to convict Hoglen of aggravated assault as a party to a crime under OCGA § 16-2-20.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). We do not weigh the evidence nor determine witness credibility, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Talifero v. State*, 319 Ga. App. 65, 66 (1) (734 SE2d 61) (2012).

OCGA § 16-2-20 (b) (5) provides that a person is a party to a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." Although "mere presence at the scene and approval of a crime not amounting to encouragement is insufficient to authorize [a] conviction as a party to a crime . . . criminal intent may be inferred from conduct before, during, and after the

commission of the crime." (Citations and punctuation omitted.) *Simpson v. State*, 265 Ga. 665, 665–666 (461 SE2d 210) (1995).

In this case, the defendant repeatedly yelled to his grandfather that the police were beating him, killing him, and hurting him. Hoglen's grandfather then admittedly fired the single shot into the air because he thought his grandson was being hurt. Whether this evidence was sufficient to establish that Hoglen encouraged his grandfather to fire a gun at the police was a question for the jury, *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997), and, in finding Hoglen guilty of aggravated assault as a party to the crime, the jury found that Hoglen was not merely present. I agree.

The evidence permitted the jury to infer that Hoglen intended his grandfather to intervene in his arrest, and Hoglen's conduct before and after the gunshot – yelling that he was being hurt and identifying his location – enabled the jury to conclude that Hoglen knew his grandfather had a firearm and intended for his grandfather to use it. This Court must review the evidence in the light most favorable to the verdict and cannot invade the province of the jury. Accordingly, the evidence was sufficient to establish Hoglen's guilt as a party to the aggravated assault. Therefore, I respectfully dissent.[1]

---

[1] Based on my conclusion that the evidence is sufficient, it would be unnecessary to remand this case for resentencing, as discussed in Division 3, supra.