**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2020**

# In the Court of Appeals of Georgia

A19A2307. DENSON v. THE STATE.

MILLER, Presiding Judge.

Steven Marcus Denson seeks review of his criminal conviction and sentence after a jury found him guilty of trafficking in methamphetamine in 2007.[1] His sole argument on appeal is that the evidence was insufficient to support his conviction. Because the State did not present any evidence from which a reasonable jury could infer that Denson was more than a mere bystander at the scene, we reverse Denson's conviction.

---

[1] For reasons unknown to this Court, the trial court did not resolve Denson's motion for new trial (timely filed in 2007) in this run of the mill drug case until nine years after it was filed. Although the record indicates that Denson has since finished serving his sentence, we nevertheless exercise our discretion to hear this appeal. See *Clark v. State*, 301 Ga. App. 354, 355 (687 SE2d 593) (2009) (noting that we have the discretion to hear a criminal appeal even after the defendant has finished serving his sentence).

Viewed in the light most favorable to the verdict,[2] the evidence adduced at trial showed that a police officer was patrolling a neighborhood in Walker County, Georgia, when he noticed a black pickup truck with a trailer that was sticking out of a driveway and blocking a lane of traffic. The officer approached the house to address the situation and saw two men outside. Once the officer made his presence known, one of the men ran to the back of the house and the other person identified himself as Bobby Henry.[3] Henry told the officer that he had come to the house to sell a motor and that the truck belonged to his girlfriend. Finding the situation "odd," the officer called for back-up and knocked on the front door. Ten minutes later, Robert Clifton, the owner of the house, answered the door and consented to a search of the house. The officers found Harold Green in a laundry room and Denson in the main bathroom. When the officer found Denson, Denson told the officer that he had spent the night and that he "did not know what was going on." During the search of the house, the officers found multiple ingredients and paraphernalia commonly used to manufacture methamphetamine. The house smelled strongly of the same smell that is usually found in methamphetamine labs, and methamphetamine lab components

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The man who ran away was never identified.

were found in every room of the house except the bathroom where Denson was found. Methamphetamine was not being "actively cooked" at the time of the search, and the police officer who conducted the search testified that he was not certain as to how long ago anything had been made in the house. .

A grand jury indicted Denson on one count of trafficking in methamphetamine by manufacture (OCGA § 16-13-31 (f)), one count of the distribution of a controlled substance (OCGA § 16-13-30 (b)), two counts of the purchase or possession of a controlled substance (OCGA § 16-13-30 (a)), and one count of possession of altered ephedrine (OCGA § 16-13-30.3 (d)). At trial, a jury convicted Denson of trafficking in methamphetamine but acquitted him of all other charges, and the trial court then sentenced Denson to ten years' imprisonment. Denson timely filed a motion for new trial in June 2007. After a hearing on the motion in April 2016, the trial court denied the motion. This appeal followed.

Denson's sole argument on appeal is that the evidence was insufficient to support his conviction for the trafficking of methamphetamine because the evidence at most showed that he was merely present at the scene. We agree.

> On appeal from a criminal conviction, we view the evidence in the light
> most favorable to the verdict and an appellant no longer enjoys the

presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citation and punctuation omitted.) *Ratana v. State*, 297 Ga. App. 747, 747-748 (678 SE2d 193) (2009). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6 (2003).

"Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto. . . ." OCGA § 16-2-21. A person is a party to a crime when that person, among other things, "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3).

While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may

4

be inferred. If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.

(Citation omitted.) *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003). "[E]vidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act." (Citation omitted.) *Ratana*, supra, 297 Ga. App. at 749.

"[A]ny person who manufactures methamphetamine . . . in violation of this article commits the felony offense of trafficking methamphetamine." OCGA § 16-13-31 (f) (2003). Georgia law defines the word "manufacture" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." OCGA § 16-13-21 (15) (2003).

We agree with Denson that the evidence was insufficient to support his conviction because there is no evidence that Denson shared the intent to traffic methamphetamine. The evidence of the strong smell and the widespread drug paraphernalia in the house, while sufficient to show that a reasonable person might be aware of some sort of illegal venture being conducted in Clifton's house, was not, in and of itself, sufficient to eliminate all reasonable doubt as to whether Denson was a party to the crime of trafficking. See *Ratana*, supra, 297 Ga. App. at 749. The circumstances of the situation simply do not present anything that we can point to that showed that Denson shared with the codefendants the intent to manufacture methamphetamine or that would exclude the reasonable doubt that Denson was simply an indifferent bystander. There is no evidence that Denson benefitted financially from the venture, procured supplies, equipment, or knowledge for the venture, or otherwise participated in the manufacturing, marketing, or distribution of the methamphetamine. Moreover, the evidence in this case showed that the methamphetamine lab was not functioning at the time of the search, and there was no evidence presented that Denson regularly spent time at Clifton's house such that a jury could presume that he was present or participated when methamphetamine was being manufactured. Because the evidence presented showed nothing more than

6

Denson's mere presence in Clifton's house, at a time when methamphetamine was not being actively manufactured, we conclude that the evidence was insufficient to support Denson's conviction for trafficking in methamphetamine. See *Franks v. State*, 325 Ga. App. 488, 492 (1) (758 SE2d 604) (2013) ("Mere presence, without proof of participation, is insufficient to support a conviction.") (citation omitted).

We further conclude that the case relied upon by the State, *Franks*, supra, and our similar decision in *Hughes v. State*, 309 Ga. App. 150 (709 SE2d 900) (2011), are materially distinguishable. In *Hughes*, the defendant was found in a house next to a bag of methamphetamine, with a fully functioning methamphetamine lab in the room next door. Id. at 151-152 (1). Additionally, evidence was presented that the defendant owned the premises in which the methamphetamine lab was found. Id. at 152 (1). In this case, there was no evidence presented that Denson owned the house, nor was there any evidence that Denson was in possession of illegal substances. Moreover, the evidence in this case showed that the methamphetamine lab was not functioning at the time of the search, and there was no evidence shown that Denson regularly spent time at Clifton's residence or had been there on another occasion when the lab was operational. Similarly, in *Franks*, the State presented evidence that the defendant was living in the house at the time of the arrest, that the defendant appeared nervous

7

around the police and rushed ahead to alert others to the officer's presence, that the defendant had suffered a serious burn, and that burns are a common injury sustained in the production in methamphetamine. *Franks*, supra, 325 Ga. App. at 493-494 (1). None of these factors are present in this case. Accordingly, because the evidence presented at trial was insufficient to sustain his conviction, we reverse Denson's conviction for trafficking of methamphetamine.

We take the time to express grave concern about the severe delays that have resulted in our resolving this direct appeal in a run of the mill criminal case nearly *thirteen years* after Denson was originally convicted and sentenced, especially now that Denson has already finished serving his substantial prison sentence. The record in this case does not reveal to us the reason why this case languished in the trial court for almost ten years between Denson's conviction and his direct appeal, but we lament that this case unfortunately serves as yet another example proving the legal maxim that "Justice delayed is justice denied." Because Denson has already completed his sentence, we note that the law provides the remedy of restricting or correcting his criminal records upon petition with the county clerk. See *Doe v. State*, 347 Ga. App. 246, 252-256 (4) (819 SE2d 58) (2018) (discussing the options available under current law to restrict or correct criminal records).

*Judgment reversed. Rickman and Reese, JJ., concur.*