304 Ga. 887
FINAL COPY

S18A1236.  CHAVERS v. THE STATE.

WARREN, Justice.

Rocquel Quinton Chavers was convicted of malice murder, violation of the Georgia Street Gang Terrorism and Prevention Act, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon in connection with the shooting death of Jasperin Armstrong.[1]  On appeal, Chavers contends that the evidence was insufficient to sustain his conviction

---

[1] The crimes occurred on September 11, 2014.  On November 10, 2014, a Crisp County grand jury indicted Chavers, Andreika Harper, and Rontavious Towns for malice murder, felony murder predicated on aggravated assault, and aggravated assault.  The indictment also charged Chavers, Towns, Kelvy Henton, and Shaquille Jackson with conspiracy to commit murder and with violation of the Street Gang Act.  Chavers alone was indicted for possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon.  Chavers was tried separately from August 17 to 21, 2015, and a jury found him guilty on all counts of the indictment.  The trial court sentenced Chavers to life imprisonment without parole for malice murder, a consecutive term of fifteen years for violation of the Street Gang Act, and additional consecutive terms of five years for each weapons charge.  The felony murder verdict was vacated by operation of law, and the aggravated assault and conspiracy counts merged into the malice murder conviction.  Chavers filed a timely motion for new trial on August 28, 2015, which was later amended by his new counsel on January 18, 2018.  A hearing was held on January 31, 2018, and the amended motion was denied on February 9, 2018.  Chavers filed a timely notice of appeal on March 2, 2018, and the case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

for violation of the Street Gang Act, that the trial court erred by allowing certain testimony over a hearsay objection, and that Chavers's trial counsel rendered ineffective assistance by failing to object to certain other testimony as hearsay. We disagree and affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed the following. Jasperin Armstrong was found dead by a passerby on the side of a road around 10:45 a.m. on September 12, 2014. Blood-spatter evidence and the condition of Armstrong's body led a GBI crime-scene specialist to determine that the body had been on the road for a significant period of time, and a GBI medical examiner concluded that Armstrong had been shot at least several hours before discovery of his body. When police later searched Armstrong's bedroom, they recovered printed gang rules, and his girlfriend verified that Armstrong was a member of the "Rollin' 20s" gang, a division of the Bloods. Investigators also recovered messages from the gang's Facebook group that included Armstrong, Chavers, co-indictee Rontavious Towns, and other members of the Rollin' 20s gang including Hassan Taylor. Towns was a leader of the gang in Cordele, Georgia, and Chavers was his superior: the head of the Rollin' 20s in Georgia. Armstrong's first cousin, Jacquese Hicks, was in a different gang and, when

members of the two gangs played a basketball game earlier that summer, a fight between the gangs broke out after Hicks elbowed Taylor, cutting his eye. But instead of fighting with his gang against his rival gang — which included his cousin — Armstrong tried to break up the fight.

After the fight, messages posted to a Rollin' 20s Facebook group criticized Armstrong's failure to fight and warned about Chavers imposing consequences. In addition, Taylor, who had been injured in the basketball game, later had a conversation with Towns, who called Chavers on speaker phone. Chavers told Taylor that they had to stick together, said how Armstrong "went out bad," and remarked that "somebody's got to die." Another time, Chavers told Towns to enforce the gang rules and "to start taking [violators] to a dark spot and just kill[ ] them and have somebody there with [him] that [he] trust[ed]." Afterward, Towns remarked that Chavers was "crazy."

Another Rollin' 20s gang member, co-indictee Shaquille Jackson — who had participated in the basketball-related fight despite having a broken hand — lived with Shameria Little in her apartment and occasionally met there with other gang members. At one meeting four days before Armstrong was murdered, Jackson, Towns, Kelvy Henton, and another man were present. Little overheard them comment that Armstrong would not fight his cousin and

heard them say that somebody was "on the plate" and "going to get ate." At trial, a gang expert testified that somebody who is "on the plate" and "going to get ate" is a targeted person who is going to be beaten or killed. On another occasion, Armstrong told Little that Towns was mad at Armstrong.

From September 10 to 12, 2014, Towns and Chavers made 45 phone calls to each other. On September 11, 2014, Jackson told another gang member that Armstrong "doesn't know how real the s*** is about to get." That evening, Chavers and co-indictee Andreika Harper drove from Bainbridge to Cordele in Harper's car and stopped in the parking lot near Little's apartment. Jackson and Towns talked to Chavers in the parking lot about Armstrong's failure to participate in the fight. Between 10:30 p.m. and 11:00 p.m., Armstrong — who had previously told his girlfriend that he was supposed to meet Chavers — got a ride from his mother, who dropped him off near the parking lot by Little's apartment. After Armstrong walked up to the group, Chavers said that everyone had been waiting for Armstrong and that Armstrong was going to take a ride with Chavers and Harper in Harper's car. After Chavers, Harper, and Armstrong left, Jackson told Henton that Chavers was "talking crazy, he's talking about killing [Armstrong]."

While driving, Chavers asked Armstrong why he had not participated in the fight with his fellow gang members and why he had missed gang meetings. After several minutes, Chavers stopped in the road and asked Armstrong to get out of the car to help him find something. After the two exited the car, Harper saw Armstrong standing on the side of the road and Chavers appearing to look for something. She then heard a loud noise and saw a flash. Chavers got back into the car by himself and asked Harper if she was okay. He told her that she could not tell anyone about what happened, that Armstrong said "don't kill me, man," and that Chavers tried to fire a second time but the gun jammed. As Chavers and Harper drove back to Bainbridge, Chavers called Towns and told him the "job had been done." Chavers threw the gun into the river in Bainbridge, and he and Harper spent the night in a motel.[2]

Chavers testified at trial. He admitted that he was the highest ranking member of the Rollin' 20s gang in Georgia; that he and Harper picked up Armstrong; and that he talked to Armstrong about the gang and the difficulties Armstrong was having with other members. However, Chavers also testified

---

[2] Harper vacuumed out her car several times, but fibers later recovered by tape lifts from the front passenger seat of the car matched fibers from Armstrong's shorts. GPS data from Chavers's cell phone confirmed that he was near Little's apartment at 10:51 p.m. on September 11, 2014, and that later that night, he was in the area where Armstrong's body was found.

that on the night of September 11, 2014, he dropped Armstrong off on the side of a road by a cemetery. Chavers insisted that he never participated in the alleged phone conversation with Taylor; never told Taylor that somebody "had to die"; and never told Towns "to take [violators] to a dark place and take care of business."

2. Chavers contends that the evidence was insufficient to prove his guilt of conspiracy to commit murder and, therefore, was also insufficient to support his conviction for violation of the Street Gang Act because that violation was predicated on the conspiracy offense.

As an initial matter, Chavers's guilty verdict for conspiracy was merged into his malice murder conviction, see OCGA § 16-4-8.1, so he "was not sentenced for that crime, and no judgment of conviction as to that crime was entered against him." *Faust v. State*, 302 Ga. 211, 213 n.3 (805 SE2d 826) (2017). Chavers's claim regarding the sufficiency of the evidence of conspiracy to commit murder is therefore moot. See id.; see also *Anderson v. State*, 299 Ga. 193, 196 n.4 (787 SE2d 202) (2016).

Chavers, however, also challenges the sufficiency of the evidence to support his conviction for violation of the Street Gang Act predicated on the conspiracy offense, and we review the sufficiency of the evidence to support

that conviction because it does not merge. To that end, Chavers was charged in the indictment with violating the Street Gang Act by participating in criminal street gang activity "through the commission of the offense of Conspiracy to Commit the Offense of Murder" while associated with the Rollin' 20s gang. To prove a violation of the Street Gang Act in this way, the State was required to show that Chavers was, in fact, associated with the Rollin' 20s, that the Rollin' 20s was a "criminal street gang," that Chavers committed a predicate act of "criminal street gang activity" — namely, the conspiracy to commit Armstrong's murder, and that the commission of the predicate act was intended to further the interests of the Rollin' 20s. See OCGA §§ 16-15-3 (1) (J), 16-15-4 (a); *Jones v. State*, 292 Ga. 656, 659 (740 SE2d 590) (2013). Only one of these requirements is the subject of this enumeration; Chavers's sole contention is that the State failed to prove that he conspired with his co-indictees to murder Armstrong.

It is true that "a defendant cannot be convicted for merely being associated with a gang that commits criminal acts; the defendant must personally commit an enumerated offense himself." *Giddens v. State*, 299 Ga. 109, 111-112 (786 SE2d 659) (2016) (citation omitted). See also *Rodriguez v. State*, 284 Ga. 803, 810 (671 SE2d 497) (2009) ("To support a conviction, the

accused must be shown to have conducted or participated in criminal street gang activity through the commission of 'an actual criminal act. Mere association is insufficient.'" (citation omitted)). And OCGA § 16-4-8 provides that "[a] person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." Chavers argues that the State failed to prove his guilt of conspiracy to commit Armstrong's murder because, according to Taylor's testimony about his phone call with Chavers and Towns, Chavers never said who "had to die" and he therefore could have been referring to someone in the rival gang (not Armstrong); because Taylor was on felony probation, giving him an incentive to provide testimony favorable to the State; because Chavers denied participation in the alleged conversation with Towns and Taylor; and because Little's testimony about the meeting in her apartment four days before Armstrong's murder did not implicate Chavers, who was not present, in a conspiracy to murder Armstrong.[3]

---

[3] Chavers also argues that, although the conspiracy count of the indictment charges in part that Chavers and other gang members met in the parking lot on the evening of the murder "to finalize the plan and physically identify the victim," the evidence failed to show the latter alleged purpose of the meeting, i.e., to identify Armstrong for Chavers. "However, where, as here, the indictment places a defendant on notice that the State will

When evaluating a challenge to the sufficiency of the evidence, we view all of the evidence presented at trial in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979). Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the facts. See id.; *Menzies v. State*, 304 Ga. 156, 160 (816 SE2d 638) (2018). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) (citation and punctuation omitted).

For a conspiracy to exist under OCGA § 16-4-8, there must be an

attempt to prove that he committed a crime in more than one manner, the jury is authorized to convict the defendant of that crime upon proof that it was committed in any of the several manners alleged." *Braley v. State*, 276 Ga. 47, 53 (572 SE2d 583) (2002); see also *Cash v. State*, 297 Ga. 859, 862 (778 SE2d 785) (2015); *Judice v. State*, 308 Ga. App. 229, 232 (707 SE2d 114) (2011) ("'[I]f a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.'") (citation omitted). Even assuming that no evidence supported the "identification" purpose of the parking lot meeting—as was charged in the conspiracy count of the indictment — that alone is not sufficient to undermine the conspiracy conviction because the evidence did support the other alleged purpose of the meeting: to finalize the plan to murder Armstrong.

agreement to commit a crime, but that agreement need not be express. "'The State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective.'" *Shepard v. State*, 300 Ga. 167, 170 (794 SE2d 121) (2016) (citation omitted). See also *Grissom v. State*, 296 Ga. 406, 409 (768 SE2d 494) (2015) ("'Conduct which discloses a common design . . . may establish a conspiracy.'" (citation omitted)); *Griffin v. State*, 294 Ga. 325, 327 (751 SE2d 773) (2013). "Where there is no evidence of an express agreement, an inference that two or more people tacitly came to a mutual understanding to commit a crime can be drawn from 'the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.'" *Brown v. State*, 304 Ga. 435, 441 (819 SE2d 14) (2018) (citation omitted).

Here, the jury was presented with ample evidence that Chavers conspired to murder Armstrong, including: Chavers's rank in the gang; his statements to fellow gang members about killing violators of gang rules; his communications with gang members who were critical of Armstrong; his own criticism of Armstrong — which was coupled with statements that "somebody's got to die"; Chavers's trip to Cordele to meet with gang members about Armstrong;

and Chavers ultimately driving Armstrong away and shooting him.[4] The evidence was more than sufficient for the jury to infer a mutual understanding between Chavers and other gang members to carry out Armstrong's murder. See *Grissom*, 296 Ga. at 409; *Owens v. State*, 251 Ga. 313, 320 (305 SE2d 102) (1983). We therefore conclude that the evidence presented against him was sufficient to authorize a rational jury to find beyond a reasonable doubt that Chavers was guilty of the conspiracy offense that served as a predicate for his conviction for violation of the Street Gang Act. See *Jackson*, 443 U. S. at 318-319.

Moreover, although Chavers has not challenged the sufficiency of the evidence supporting his other convictions, it is our customary practice to review the sufficiency of the evidence in murder cases, and we have done so here. After reviewing the record of Chavers's trial, we conclude that the evidence presented against him was sufficient to authorize a rational jury to find beyond a reasonable doubt that Chavers was guilty of all of the other crimes of which he was convicted. See *Jackson*, 443 U. S. at 318-319.

---

[4] To the extent that Chavers argues that the alleged hearsay discussed in Divisions 3 and 4 was inadmissible and therefore could not support a guilty verdict for conspiracy, we note that, "in reviewing the sufficiency of the evidence, we consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *Dublin v. State*, 302 Ga. 60, 67-68 (805 SE2d 27) (2017) (citation and punctuation omitted).

3. Chavers also contends that the trial court erred by allowing Henton to testify over a hearsay objection about certain statements that Jackson made to Henton on the night of the crimes. According to Henton's testimony, after Chavers and Harper drove away with Armstrong on the night of Armstrong's murder, Jackson said that Chavers was "talking crazy" and "talking about killing" Armstrong. Specifically, Chavers objected that the State had not shown that Jackson was a co-conspirator at that stage, and that Henton's testimony about Jackson's statements was therefore inadmissible hearsay.

Under OCGA § 24-8-801 (d) (2) (E) ("Rule 801 (d) (2) (E)"), the hearsay rule does not exclude "a statement offered against a party which is . . . [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy . . . ." To admit a co-conspirator's statement "under Rule 801 (d) (2) (E), the State is required to show by a preponderance of the evidence that a conspiracy existed, the conspiracy included the declarant and the defendant against whom the statement is offered, and the statement was made during the course and in furtherance of the conspiracy." *Kemp v. State*, 303 Ga. 385, 392 (810 SE2d 515) (2018). On appeal, Chavers argues only that the evidence was insufficient to prove that Chavers conspired with Jackson and

others to kill Armstrong — i.e., that Chavers and Jackson were not co-conspirators.

"In determining the existence of a conspiracy, the trial court may consider both the co-conspirator's statements and independent external evidence, although the co-conspirator's statement alone does not suffice." *Dublin v. State*, 302 Ga. 60, 63 (805 SE2d 27) (2017). And "[i]n considering whether a conspiracy was established for purposes of the rule, we do not require that the conspiracy be proven prior to the admission of the evidence in question, but only that the conspiracy was proven at trial." Id. at 63-64. As already discussed in Division 2, the State sufficiently proved the existence of a conspiracy that included Chavers, "the defendant against whom the statement is offered." *Kemp*, 303 Ga. at 392. The State also showed that Jackson, the declarant, was part of the conspiracy to murder Armstrong by presenting evidence that Jackson fought against the rival gang in the basketball-related fight, criticized Armstrong for not fighting and at the same time discussed targeting someone to be beaten or killed, told another gang member on the day of the murder that Armstrong did not know "how real the s*** is about to get," and was present in the parking lot to meet and talk with Chavers just before Armstrong was taken away and killed. The State established by a

preponderance of the evidence that Jackson conspired with Chavers and other gang members to murder Armstrong. See *Dublin*, 302 Ga. at 63-64. Indeed, the evidence shows that as fellow members of the Rollin' 20s gang, Chavers and Jackson were "part of a larger criminal conspiracy." *Kemp*, 303 Ga. at 393. Accordingly, Chavers's argument on appeal fails.

4. Chavers's final contention is that his trial counsel rendered ineffective assistance by failing to make a hearsay objection to certain testimony by Harper about statements that Jackson made to Chavers on the night of Armstrong's murder. According to Harper's testimony, when she and Chavers pulled into the parking lot in Cordele, Jackson started telling Chavers about what Armstrong "wasn't doing and what had conspired [sic[5]] previously" and about how Armstrong "didn't get into the fight that they were — that he was involved in, and then about just the stuff that he wasn't doing." Because Chavers has not shown that his trial counsel's performance was deficient or that any deficiency was prejudicial, his claim of ineffective assistance fails.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient

---

[5] Viewed in context, it appears that Harper meant to use the word "transpired" instead of "conspired."

performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, 'decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.'" Id. (citation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Chavers argues that his trial counsel performed deficiently by failing to object to Harper's testimony about Jackson's statements to Chavers when — in Chavers's view — those statements were inadmissible under Rule 801 (d) (2) (E) because the evidence was insufficient to prove that Chavers conspired with Jackson and others to kill Armstrong. But trial counsel's testimony at the motion for new trial hearing reveals that his failure to object was strategic: Harper's testimony supported counsel's strategy of incriminating Jackson by showing that Jackson was angry at Armstrong and had a motive to kill him. In light of that testimony, trial counsel's decision to use Harper's testimony in support of a defense strategy — and not to object to it on hearsay grounds — was not so patently unreasonable that no competent attorney would have "chosen to forgo an objection to this testimony." *Morrison v. State*, 300 Ga. 426, 429 (796 SE2d 293) (2017). And in any event, as discussed in Division 3, the evidence was sufficient to prove the existence of a conspiracy that included both Chavers (the defendant) and Jackson (the declarant), and Chavers does not dispute that Jackson's statements to Chavers were made in the course and in furtherance of the conspiracy. See *Kemp*, 303 Ga. at 393-

Thus, an objection to Harper's testimony about Jackson's statements would have been without merit, and the "[f]ailure to make a meritless objection cannot be considered deficient or prejudicial." *Stuckey v. State*, 301 Ga. 767, 773 (804 SE2d 76) (2017). Chavers's claim of ineffective assistance therefore fails.

Judgment affirmed. All the Justices concur.

Decided January 22, 2019.

Murder. Crisp Superior Court. Before Judge Chasteen.

<u>David J. Walker</u>, for appellant.

<u>Bradford L. Rigby, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General</u>, for appellee.