FINAL COPY
309 Ga. 650

S20A1024. STUDIVANT v. THE STATE.

B<small>LACKWELL</small>, Justice.

Marquis Lejon Studivant was tried by a Hall County jury and convicted of murder and other crimes in connection with the fatal shooting of Dennis Gayton. Studivant appeals, claiming that the evidence is insufficient to sustain his convictions, that the trial court erred when it denied his motion to suppress evidence that was collected from a vehicle he was driving around the time of his arrest, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error and affirm.[1]

---

[1] Gayton was shot in April 2017. A Hall County grand jury indicted Studivant and Tadrick Osborne in November 2017, charging each of them with murder during the commission of a felony and conspiracy to sell synthetic marijuana. Studivant alone was charged with two additional counts of felony murder, attempted armed robbery, two counts of aggravated assault, cruelty to children, the unlawful possession of a firearm during the commission of a crime, and the unlawful possession of a firearm by a convicted felon. Osborne pleaded guilty to lesser charges and testified in August 2018 at Studivant's trial. The jury found Studivant guilty of all charges, and the trial court sentenced him to imprisonment for life for felony murder predicated on conspiracy to sell synthetic marijuana, a concurrent term of imprisonment for

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Studivant and Tadrick Osborne were drug dealers in the Newtown neighborhood of Gainesville. On the evening of April 4, 2017, Osborne had two bags of synthetic marijuana, and he and Studivant agreed that Osborne would sell one bag to a "dude named Mel" and that they would "go somewhere and sell [the other bag] together." Around 9:30 or 10:00 p.m., as Studivant and Osborne walked toward the location at which they planned to meet "Mel," Gayton drove up to them in his truck — accompanied by his 15-year-old son — and said that he wanted to buy drugs for $40. Studivant approached Gayton's parked truck, and when Gayton pulled out approximately $70, Studivant demanded all

twenty years for an aggravated assault upon Gayton's son, and a consecutive term of imprisonment for five years for the unlawful possession of a firearm during the commission of a crime. The other firearm possession count was nolle prossed, the other felony murder counts were vacated by operation of law, and the trial court merged the remaining counts for sentencing purposes. (These mergers are not challenged on appeal, and we, therefore, decide nothing about them. See Dixon v. State, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017).) Studivant timely filed a motion for new trial in August 2018, which he amended in April 2019. The trial court denied the motion in July 2019, Studivant filed a motion for an out-of-time appeal in December 2019, the trial court allowed an out-of-time appeal in January 2020, and Studivant timely filed a notice of appeal. The case was docketed in this Court for the April 2020 term and submitted for decision on the briefs.

the money. When Gayton refused, Studivant pointed a handgun at Gayton and his son, and Studivant fatally shot Gayton as Gayton attempted to wrestle the gun from him. A man who knew Studivant heard the gunshots and saw Studivant and Osborne flee the scene together. Studivant later confessed to his ex-boyfriend that he killed Gayton, although he claimed that he did so in self-defense. Gayton's son identified Studivant as the man who killed his father.

Studivant claims that the evidence is insufficient to sustain his convictions because there was no evidence that he and Osborne conspired to sell synthetic marijuana and because Osborne's testimony was not corroborated, as required by OCGA § 24-14-8. Both of these claims, however, lack merit. The State may prove a conspiracy "by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective," and "[w]here there is no evidence of an express agreement, an inference that two or more people tacitly came to a mutual understanding to commit a crime can be drawn from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other

circumstances." <u>Chavers v. State</u>, 304 Ga. 887, 891-892 (2) (823 SE2d 283) (2019) (citations and punctuation omitted). Here, there was evidence that Studivant and Osborne were in the business of selling synthetic marijuana together (with Osborne acting as Studivant's "boss"), and Osborne testified that he and Studivant were walking in Newtown on the evening of April 4, 2017, with the understanding that Osborne would sell one of the bags of synthetic marijuana to "Mel" and that Studivant and Osborne would sell the other bag "together." Studivant and Osborne were observed together by multiple witnesses that evening (including one who saw them fleeing from the crime scene together), and only Studivant was described as carrying a bag (which the jury could infer contained the drugs that the men had conspired to sell). The evidence is sufficient under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to authorize a rational trier of fact to find beyond a reasonable doubt that Studivant was guilty of felony murder predicated on a conspiracy to sell synthetic marijuana as well as the other crimes of which he was convicted. See <u>Jackson v.</u>

<u>Virginia</u>, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

As to Studivant's claim under OCGA § 24-14-8 that the State failed to corroborate Osborne's testimony, the record shows that Studivant was identified by Gayton's son as the man who fatally shot his father, he was identified by an acquaintance as he fled the crime scene, and he confessed to his ex-boyfriend that he had shot Gayton. The jury was authorized to find that such evidence sufficiently corroborated Osborne's testimony. See <u>Crawford v. State</u>, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014) ("Once the State adduces [corroborating] evidence, it is peculiarly a matter for the jury to determine whether the evidence sufficiently corroborates the accomplice's testimony and warrants a conviction." (citation and punctuation omitted)).

2. Studivant contends that the trial court erred when it denied a motion to suppress evidence that was collected pursuant to a search warrant from a vehicle that Studivant was driving shortly before his arrest. In September 2017 — after a warrant was issued

for his arrest — officers learned that Studivant was driving a Chevrolet Tahoe in Newtown. Officers found the Tahoe, and Studivant briefly led the officers on a chase before he crashed the Tahoe, fled on foot, and ultimately was captured and arrested. Soon thereafter, an investigator secured a search warrant for the crashed Tahoe, which resulted in the discovery of a rose-colored iPhone, the data on which was later searched pursuant to a second warrant. Studivant filed a motion to suppress evidence collected from the Tahoe (including what he claimed was incriminating evidence contained on the iPhone), asserting that the warrant to search the Tahoe was not supported by probable cause.

But we need not decide whether the search warrant for the Tahoe was lawful because the record shows that the incriminating iPhone evidence about which Studivant complains was not found on the (rose-colored) iPhone discovered in the Tahoe, but rather on a black iPhone that was taken from Studivant's person when he was arrested (and that was searched pursuant to a warrant that is not challenged on appeal by Studivant). Because no evidence collected

from the Tahoe (either directly or indirectly via the search of the rose-colored iPhone) was admitted at trial, this enumeration of error is without merit. See Lawler v. State, 276 Ga. 229, 233 (4) (d) (576 SE2d 841) (2003).

3. Finally, Studivant claims that he was denied the effective assistance of counsel when his trial lawyer failed to call Studivant's girlfriend as an alibi witness. To prevail on a claim of ineffective assistance, Studivant must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Studivant must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U.S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Studivant must show "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U.S. at 382 (II) (C), and Studivant has failed to carry it.

At the hearing on Studivant's motion for new trial, his girlfriend testified that she was living with Studivant and their respective children on the day that Gayton was killed, she left Studivant and the children at their house "roughly around 3:00, maybe 4:00" that afternoon to go to work, she called "around supper time" to check on the children, and she "came back home from work" later that night to find that Studivant was at the house. On cross-examination, the girlfriend testified that she "want[ed] to say" that she returned home from work between 10:00 and 11:00 p.m., but she also acknowledged that — whenever she returned home — "the police cars were already there and there were lights everywhere as a result of the investigation into the murder."

Studivant's trial lawyer testified that his investigator spoke to

the girlfriend at least twice about potential alibi testimony, but the lawyer ultimately decided not to call the girlfriend as a witness at trial. Given that the girlfriend's testimony would have been only that Studivant was present at the house at an uncertain amount of time both before and after the killing (and that it "wasn't too far" between the crime scene and the house), her testimony would not clearly have established an alibi for Studivant at the time of the shooting, and Studivant has not shown that his lawyer's decision not to call the girlfriend as a witness was constitutionally deficient. See Shockley v. State, 297 Ga. 661, 665-666 (3) (777 SE2d 245) (2015) (deficient performance not established where lawyer failed to call defendant's mother as an alibi witness because mother was ambiguous and uncertain about time frames and jury was unlikely to give her testimony much credit because of her relationship with the defendant).

Judgment affirmed. All the Justices concur.


DECIDED AUGUST 24, 2020.

Murder. Hall Superior Court. Before Judge Bearden.

*James K. Luttrell*, for appellant.

*Lee Darragh, District Attorney, Harold A. Buckler, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.