**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 24, 2025**

# In the Court of Appeals of Georgia

A24A1706. ASHLEY v. THE STATE.

BARNES, Presiding Judge.

A jury found Nicholas Justin Ashley guilty of trafficking in methamphetamine and possession of methamphetamine with intent to distribute. On appeal from the denial of his amended motion for new trial, he challenges the sufficiency of the evidence to support the verdict. Ashley also contends that the trial court erred by admitting into evidence certain text messages containing hearsay and certified court records reflecting his prior conviction for possession of methamphetamine with intent to distribute. For the reasons discussed below, we affirm.

Construed in favor of the verdict,[1] the evidence showed that on the afternoon of February 18, 2021, a confidential informant met two law enforcement officers with the Chattooga County Sheriff's Department and told them that she could set up the purchase of up to a half pound of methamphetamine through a drug dealer who was currently in prison. The informant said that she and the prisoner had exchanged text messages on FaceBook Messenger about arranging the drug deal and that the prisoner would have someone deliver the drugs for her to buy. She showed the text messages to the officers.

The officers arranged for the informant to meet them at a different location that evening. When the informant arrived there, the officers searched her person and her car and found no contraband. The officers decided to have the informant carry out the controlled buy at a nearby gas station in Chatooga County, and the officers followed her to the station in a separate unmarked vehicle.

When the informant arrived at the gas station, she parked at one corner of the station and the officers parked at the opposite corner. The informant continued to communicate by text message with the prisoner and with one of the officers as she

---

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

waited for the delivery. The informant did not know who would be delivering the drugs for the prisoner.

While waiting for the drugs to be delivered, the informant stayed in her vehicle and remained under the surveillance of the officers, except for three or four minutes when she went into the gas station to use the restroom and then returned to her car. Approximately 30 minutes after arriving at the gas station, the officers saw a driver, later identified as Ashley, pull into an adjacent store's parking lot. A female passenger exited the car and waited in front of the store as Ashley drove to another nearby parking lot, where he got out of his car and went through the trunk. He then got back into his car, returned to the store, and picked up the passenger. After doing so, Ashley drove his car over to the gas station where the informant was parked and stopped beside her vehicle.

Ashley got out of his car and got into the informant's vehicle. The informant asked Ashley if she could see the drugs, and he handed her a brown paper bag. After looking inside the bag, the informant handed the bag back to Ashley and told him that she needed to get the money out of the trunk. She then got out of her car and opened the trunk, which was the prearranged signal to the officers that the drugs had been

delivered. Upon seeing the signal, the officers approached the cars, and Ashley got into his vehicle and attempted to leave. However, the officers detained Ashley and seized the paper bag of drugs that he had thrown into the backseat of the informant's car. The drugs subsequently were delivered to and tested at the Georgia Bureau of Investigation crime lab. The drugs tested positive as methamphetamine with a weight of 161 grams.

Ashley was charged with trafficking in methamphetamine and possession of methamphetamine with intent to distribute. At the ensuing jury trial, the informant testified to events as set out above, and the State introduced into evidence the text messages between the informant and the prisoner in which they arranged the drug deal. The State called several additional witnesses, including the two law enforcement officers who met with the informant, conducted surveillance of the controlled buy, and arrested Ashley, as well as the forensic chemist who tested the drugs. The State also introduced into evidence certified court records reflecting Ashley's prior conviction for possession of methamphetamine with intent to distribute for the limited purpose of proving his intent.

Ashley elected not to testify and did not call any defense witnesses. Ashley's defense centered on attempting to discredit the confidential informant through cross-examination and seeking to cast doubt on the State's assertion that he met with the informant to effectuate the sale of drugs to her as arranged by the prisoner. During closing argument, defense counsel maintained that the State failed to rule out the possibility that Ashley was at the scene simply to purchase drugs from the informant and that the informant framed him as the drug deliveryman to improve her own deal with the State.

At the conclusion of the trial, the jury found Ashley guilty of both charged offenses. The trial court merged Ashley's conviction for possession of methamphetamine with intent to distribute into his conviction for trafficking in methamphetamine for purposes of sentencing. Ashley filed a motion for new trial, as amended, which the trial court denied after conducting a hearing. This appeal followed.

1. Ashley contends that the evidence was insufficient to support his conviction for trafficking in methamphetamine.[2]

---

[2] Because Ashley's conviction for possession of methamphetamine with intent to distribute was merged into his trafficking conviction, "he was not sentenced for

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, this Court will uphold the jury's verdict.

(Citation and punctuation omitted.) *Franks v. State*, 325 Ga. App. 488, 491 (1) (758 SE2d 604) (2013). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

OCGA § 16-13-31 (e) provides, in relevant part, that "[a]ny person who . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine[.]" "Therefore, to establish the crime of trafficking in methamphetamine, the State was required to show only that [Ashley]

---

[the former] crime, and no judgment of conviction as to that crime was entered against him." (Citation and punctuation omitted.) *Chavers v. State*, 304 Ga. 887, 890 (2) (823 SE2d 283) (2019). Thus, to the extent that Ashley challenges the sufficiency of the evidence to support his conviction for possession of methamphetamine with intent to distribute, his claim is moot. See id.

possessed 28 or more grams of methamphetamine." *Smith v. State*, 350 Ga. App. 496, 498 (829 SE2d 776) (2019). "A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Citation and punctuation omitted.) *Murphy v. State*, 314 Ga. App. 753, 755 (2) (725 SE2d 866) (2012).

The confidential informant testified that she arranged the sale of methamphetamine with the prisoner, that Ashley drove up and parked his car next to hers in the location arranged for the purchase, and that Ashley got into her car, handed her the bag of methamphetamine, and waited after she told him she needed to get the money from her trunk. The forensic chemist who tested the substance in the seized bag testified that it tested positive for methamphetamine and weighed 161 grams. This evidence, viewed in the light most favorable to the verdict, was sufficient to authorize a rational jury to find Ashley guilty beyond a reasonable doubt of trafficking in methamphetamine. See OCGA § 16-13-31 (e); *Jackson*, 443 U.S. at 319 (III) (B). See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Vasquez v. State*, 275 Ga. App. 548, 549 (621 SE2d 764) (2005) (concluding that evidence was sufficient to support conviction for trafficking in

methamphetamine, where confidential information positively identified the defendant as the seller).

Contending that the evidence was insufficient, Ashley emphasizes that the officers involved in the controlled buy could not see what specifically transpired inside the informant's car based on their vantage point and that no electronic surveillance equipment was used to record the transaction. He also argues that the informant was unreliable. While it is true that the officers could not see what occurred inside the informant's car and did not conduct electronic surveillance, their testimony corroborated the informant's testimony as to what occurred based on their communications with her before the controlled buy when she was arranging the drug deal and their observance of Ashley's behavior leading up to the buy. And, as we have repeatedly stated, it was the duty of the jury, not this Court, to decide witness credibility, resolve any conflicts in the testimony, and weigh the evidence. See *Franks*, 325 Ga. App. at 491 (1); *Vasquez*, 275 Ga. App. at 549. Ashley thus has failed to show a valid basis for reversal of his trafficking conviction.

2. At trial, the trial court admitted the text messages between the confidential informant and the prisoner in which they arranged the drug deal based on the

exception to the hearsay rule for statements of a declarant's then-existing state of mind (such as intent, plan, or motive) found in OCGA § 24-8-803 (3) ("Rule 803 (3)"). On appeal, Ashley argues that many of the prisoner's statements contained in his text message exchange with the informant were inadmissible under Rule 803 (3) because they were not declarations of his intent, plan, or motive or were in the form of questions asked to the informant.

Rule 803 (3) provides an exception to the hearsay rule for statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health." OCGA § 24-8-803 (3).[3] The exception generally does not include "a statement of memory or belief

---

[3] Rule 803 (3) states:
    The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness: . . .
    (3) **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless such statements relate to the execution, revocation, identification, or terms of the declarant's will and not including a statement of belief as to the intent of another person[.]
OCGA § 24-8-803 (3).

to prove the fact remembered or believed" or "a statement of belief as to the intent of another person." Id.

Before a declarant's statement can be admitted under Rule 803 (3), "the declarant's state of mind must be a relevant issue." (Citation and punctuation omitted.) *Maloof v. MARTA*, 330 Ga. App. 763, 765 (1) (a) (769 SE2d 174) (2015). But admissibility under this exception is not limited to cases where a declarant's state of mind is directly at issue; "if it is relevant what a person did at a particular time, that person's statement of her then-existing intent as to what she would do is admissible as circumstantial evidence that she did what she intended." Paul S. Milich, Ga. Rules of Evidence § 19:5, n. 14 (Sept. 2024 update). See Fed. R. Evid. 803 (3), Advisory Committee Note (explaining that Federal Rule 803 (3) allows for the admission of "evidence of intention as tending to prove the doing of the act intended");[4] *Mut. Life Ins. Co. of New York v. Hillmon*, 145 U. S. 285, 295 (12 SCt 909, 36 LEd 706) (1892)

[4] Because Rule 803 mirrors Rule 803 of the Federal Rules of Evidence, "we may look to federal case law for guidance in interpreting our statute." *Ciras, LLC v. Hydrajet Technology*, 333 Ga. App. 498, 500 (773 SE2d 800) (2015). Moreover, "Advisory Committee Notes to the Federal Rules of Evidence are highly persuasive in interpreting provisions of Georgia's current Evidence Code that are materially identical to provisions of the Federal Rules of Evidence that were in effect when the current Evidence Code was adopted." *Williams v. Harvey*, 311 Ga. 439, 445 (1) (a) (858 SE2d 479) (2021).

(concluding that letter expressing declarant's intent to leave Wichita was admissible because the declaration of intent "would tend to corroborate the evidence already admitted, and to show that he went from Wichita"); *United States v. Donley*, 878 F2d 735, 738 (II) (3d Cir. 1989) ("Statements admitted under [Federal Rule] 803 (3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan."); *United States v. Jenkins*, 579 F2d 840, 842-843 (I) (4th Cir. 1978) (concluding that declarant's statement that "'I'm on my way' . . . would be admissible under [Federal] Rule 803(3) . . . to promote an inference that she actually effectuated her intent and set out"); *United States v. MacInnes*, 23 FSupp3d 536, 542 (A) (1) (E.D. Pa. 2014) (ruling that declarant's statement of intent to take certain action was admissible under Rule 803 (3) "to corroborate other evidence that a planned action actually took place"). See also 2 Robert P. Mosteller, et al., McCormick On Evidence § 275 (July 2022 update) ("Statements of state of mind are now recognized as admissible to prove subsequent conduct. Thus, out-of-court statements that tend to prove a plan, design, or intention of the declarant may be received, subject to the usual limitations as to remoteness in time and perhaps apparent sincerity common to all statements of mental state, to prove that the plan,

11

design, or intention of the declarant was carried out by the declarant.") (footnotes omitted).

Here, the informant sent text messages to the informant stating "When you get the card working im going to bring you work," and "what time you think it will be so I can set it up now." The trial court acted within its discretion in admitting these text messages under Rule 803 (3) because they were relevant and admissible to show the prisoner's intent, plan, and design for the sale and delivery of the methamphetamine to the informant and as circumstantial evidence that the planned action actually took place. See Milich, supra, § 19:5, n. 14; Mosteller, supra, § 275; *Hillmon*, 145 U. S. at 295; *Donley*, 878 F2d at 738 (II); *Jenkins*, 579 F2d at 842-843 (I); *MacInnes*, 23 FSupp3d at 542 (A) (1). Moreover, Ashley concedes on appeal that the prisoner's statement that he was going to bring the informant some "work," as well as additional text messages from the prisoner that he was doing some math calculations and that he did not know yet who would be making the delivery for him, were admissible under the exception.

While Ashley contends that other statements made by the prisoner in the text messages fell outside of the scope of Rule 803 (3) because they were not declarations

of his then-existing intent or plan to arrange the drug deal, we conclude that any error in their admission was harmless.

> A trial court's decision whether to admit or exclude evidence is reviewed on appeal for an abuse of discretion. But if the trial court abuses its discretion in excluding evidence, we will reverse a conviction for a trial court's evidentiary error only if it was harmful. It is well-settled that the test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.

(Citations and punctuation omitted.) *Tarver v. State*, 319 Ga. 165, 169-170 (2) (902 SE2d 652) (2024).

Notably, Ashley does not challenge the admission of *any* of the informant's statements contained in the text messages, and as noted above, he concedes that some of the prisoner's statements were admissible under Rule 803 (3). Ashley further acknowledges that most of the allegedly inadmissible statements were "cumulative to the . . . relevant messages that could possibly fall under the exception," and we note that both the lead officer and informant testified without objection that the informant arranged for the sale and delivery of the methamphetamine through a prisoner. It is well-established that the improper admission of hearsay evidence is harmless when it is largely cumulative of other evidence admitted at trial. See *Tarver*, 319 Ga. at 172 (2).

13

Moreover, Ashley points out that many of the statements at issue "were in the form of questions," but "aside from certain unusual circumstances[,] . . . questions are not hearsay, because they do not assert anything, nor are they intended as assertions," and thus those statements were not subject to exclusion on hearsay grounds irrespective of whether Rule 803 (3) applied. *Walker v. State*, 306 Ga. 637, 645 (2) (b) (832 SE2d 783) (2019). Additionally, the State presented strong evidence of Ashley's guilt based upon the testimony of the officers who conducted surveillance of the controlled buy, the informant, and the forensic chemist. Under these circumstances, even if we assume that some of the prisoner's statements in the text messages were inadmissible under Rule 803 (3), it is highly probable that their admission did not contribute to the verdict. See *Pounds v. State*, ___ Ga. ___, ___ (3) (b) (Case No. S24A0884, decided Nov. 5, 2024) (assuming without deciding that admission of statements violated Rule 803 (b), but concluding that any error in their admission was harmless "in light of all of [the] evidence against [the defendant]" presented by the State); *Jennings v. State*, 318 Ga. 579, 588 (2) (899 SE2d 210) (2024) ("Given the other strong evidence at trial, Jennings cannot show that the introduction of the Facebook messages . . . between her and Street likely affected the outcome of the trial court proceedings, particularly since

14

Street testified about the content of the messages."); *Williams v. State*, 316 Ga. 304, 314 (4) (888 SE2d 60) (2023) (concluding that any error in admitting hearsay was harmless in light of the strength of the evidence identifying and inculpating the defendant and because it was cumulative of other testimony).

3. Before trial, the State asked the trial court to admit Ashley's prior conviction for possession of methamphetamine with intent to distribute under OCGA § 24-4-404 (b) ("Rule 404 (b)"), and Ashley sought exclusion of the evidence. After conducting a pretrial hearing, the trial court ruled that the prior conviction was admissible under Rule 404 (b) and entered a written order to that effect. The trial court found that the prior act was relevant to prove Ashley's intent, that the probative value of the evidence was not substantially outweighed by unfair prejudice under OCGA § 24-4-403 ("Rule 403"), and that the certified court records submitted by the State, which reflected that Ashley pled guilty to the prior offense, were sufficient proof that he committed the prior act.

On appeal, Ashley challenges the admission of his prior conviction under Rule 404 (b). Pursuant to that rule, "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity

therewith." OCGA § 24-4-404 (b).[5] But such other acts evidence may be admissible

for other purposes, including to prove intent. Id. Nevertheless, under Rule 403, even

relevant evidence offered for a proper purpose may be excluded "if its probative value

is substantially outweighed by the danger of unfair prejudice." OCGA § 24-4-403.[6]

To determine the admissibility of other acts evidence under the aforementioned rules,

we employ a three-pronged test. See *Hounkpatin v. State*, 313 Ga. 789, 794 (2) (873

SE2d 201) (2022). Under that test, when the State seeks the admission of other acts

evidence, it must show that

> (1) the evidence is relevant to an issue in the case other than the
> defendant's character, (2) the probative value is not substantially

---

[5] Rule 404 (b) states in part:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .
OCGA § 24-4-404 (b).

[6] Rule 403 states:
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
OCGA § 24-4-403.

outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

(Footnote omitted.) *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017). We review a trial court's decision to admit other acts evidence under this test for an abuse of discretion. *Heard v. State*, 309 Ga. 76, 85 (3) (b) (844 SE2d 791) (2020).

Ashley concedes that the State established the third prong of the test — proof that he committed the prior offense. We therefore examine only whether the trial court acted within its discretion in finding that the State established the first and second prongs.

(a) *Relevance.* The trial court committed no error in concluding that Ashley's prior conviction for possession of methamphetamine with intent to distribute was relevant to prove intent. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "The test for relevance is generally a liberal one, and relevance is a binary concept – evidence is relevant or it is not[.]" (Citations and punctuation omitted.) *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022).

With regard to intent, "a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." *State v. Jones*, 297 Ga. 156, 161 (2), n. 4 (773 SE2d 170) (2015).

> Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied.

(Citations and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015).

Because Ashley pled not guilty to the charged offenses and did not take any affirmative steps to withdraw his intent as an element that had to be proven by the State, he placed his intent at issue in the present case. See *Hargrove v. State*, 361 Ga. App. 106, 113 (2) (c) (i) (863 SE2d 364) (2021). And

> [t]o prove that [Ashley] committed the charged crime of possession of [methamphetamine] with intent to distribute, the State had to prove both that [Ashley] had actual or constructive possession of the drugs and that he had the requisite intent to distribute them. Because the prior crime of possession with intent to distribute and at least one of the offenses for which [Ashley] was on trial were identical, the intent required to prove the crimes was necessarily the same.

18

(Citations and punctuation omitted.) Id. at 114 (2) (c) (i). Thus, Ashley's prior conviction for possession of methamphetamine with intent to distribute was relevant to prove the requisite intent to distribute in this case, as the trial court properly concluded. See id. (concluding, in prosecution for possession of cocaine with intent to distribute and trafficking in heroin, that evidence of prior conviction of possession of cocaine with intent to distribute cocaine was relevant to prove intent); *Burgess v. State*, 349 Ga. App. 635, 640-641 (3) (824 SE2d 99) (2019) (concluding, in prosecution for possession of cocaine with intent to distribute and sale of cocaine, that evidence of prior conviction for possession of cocaine with intent to distribute was relevant to prove intent), disapproved on other grounds by *Hill v. State*, 360 Ga. App. 143, 146, n. 4 (860 SE2d 893) (2021); *Gunn v. State*, 342 Ga. App. 615, 621 (1) (804 SE2d 118) (2017) (concluding, in prosecution for possession of cocaine with intent to distribute and trafficking in cocaine, that evidence of prior conviction for possession of cocaine with intent to distribute was relevant to prove intent).

(b) *Probative Value versus Prejudicial Effect.* The trial court also committed no error in concluding that the probative value of Ashley's former conviction was not substantially outweighed by its unfair prejudice under Rule 403.

> In weighing the probative value of other acts evidence, a court may consider a number of factors, including (1) prosecutorial need, (2) overall similarity of the other acts and the acts charged, and (3) the temporal remoteness of the other acts. We must keep in mind that the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly.

(Citations and punctuation omitted.) *Burns v. State*, 368 Ga. App. 642, 649-650 (2) (889 SE2d 447) (2023).

As to prosecutorial need, Ashley's defense at trial relied heavily upon attempting to discredit the confidential informant, and the State had a need for and was entitled to present other acts evidence "to combat [his] attacks on the [informant's] credibility." *Martin v. State*, 361 Ga. App. 511, 517 (2) (b) (864 SE2d 693) (2021). See *Strother v. State*, 305 Ga. 838, 847 (4) (d) (828 SE2d 327) (2019) (concluding that "[t]he State needed to, and was entitled to, counter the defense theory challenging the credibility of its . . . main witnesses" through other acts evidence). Furthermore, the defense theory was that the State could not rule out that

Ashley was at the gas station to buy a personal amount of drugs from the informant but had been framed as the seller by the informant, and a "classic situation[ ] calling for admissibility of independent crimes or acts to prove intent [is] when the defendant admits a certain involvement in the criminal incident but maintains he was duped . . . and thus lacked the necessary criminal intent[.]" (Citation and punctuation omitted.) *Sloan v. State*, 351 Ga. App. 199, 209-210 (2) (e) (i) (830 SE2d 571) (2019). Accordingly, the State demonstrated a prosecutorial need for introducing the prior conviction to prove Ashley's intent to distribute. See id. See also *United States v. Cochran*, 683 F3d 1314, 1321 (III) (11th Cir. 2012) (noting that prior convictions relating to "drug trafficking are considered highly probative of intent to commit the charged drug trafficking offenses");[7] *Moton v. State*, 351 Ga. App. 789, 793 (833 SE2d 171) (2019) ("Evidence of prior drug activity is highly probative of intent to sell a controlled substance.").[8]

---

[7] "We look to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in construing and applying Rules 403 and 404 (b)." *Moton v. State*, 351 Ga. App. 789, 793, n. 4 (833 SE2d 171) (2019).

[8] The present case is distinguishable from *Wright v. State*, 362 Ga. App. 867, 880-884 (2) (b) (870 SE2d 484) (2022), where we held that the trial court abused its discretion in admitting the defendant's prior conviction for possession of marijuana with intent to distribute to prove intent to distribute the synthetic cannabinoid known

As to the similarity between his prior conviction and the acts charged in this case, Ashley emphasizes that the State did not introduce any evidence about the circumstances surrounding his prior conviction and instead relied exclusively on certified court records.

> However, when extrinsic crimes evidence is introduced to prove defendant acted with a specific criminal intent, the probative value of the prior crimes evidence depends in large part on the similarity of the offenses, regardless of whether there are differences in the manner in which defendant committed the crimes. Thus, evidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has some tendency to make more or less probable — that the same defendant committed a similar act with the same sort of intent. And when, as here, the prior and current crimes are identical and the State introduces defendant's prior conviction demonstrating that he was previously convicted of an identical crime

---

as "spice." In concluding that the trial court abused its discretion, we explained why the prosecutorial need for the defendant's prior intent-to-distribute conviction to prove intent was minimal under the specific circumstances of that case. See id. at 881-882 (2) (b) (ii). We noted that the defendant's defense in that case was that he possessed a *different* bag than the one containing the illegal spice. See id. In contrast, in the present case, Ashley's defense was that the State had not ruled out the possibility that he only had the intent to purchase methamphetamine, not to distribute it, which, as previously noted, is a paradigmatic example of where there is a prosecutorial need for other acts evidence to prove the requisite intent. See Milich, supra, § 11:15; *Sloan*, 351 Ga. App. at 209-210 (2) (e) (i).

requiring the State to prove he acted with an identical specific criminal intent, the similarity in the manner of commission of the crimes may be of lesser importance. In both instances, the State was required to prove knowing possession of contraband with intent to distribute. Accordingly, the evidence of prior crime was highly relevant to the issue of [Ashley's] unlawful possession of [methamphetamine] with the intent to distribute or sell it, and the manner of distribution was largely irrelevant.

(Citations and punctuation omitted.) *Burgess*, 349 Ga. App. at 642-643 (3). See *Ward v. State*, 372 Ga. App. 383, 391 (3) (902 SE2d 211) (2024) (concluding, in case where "the State submitted only a certified copy of [the defendant's] guilty plea and conviction" for the prior offense, that there was sufficient similarity between the prior and current crimes to warrant the introduction of the prior offense to prove intent).

As to the question of temporal remoteness, we cannot say that Ashley's prior conviction was too remote to be probative. "There is no bright-line test with regard to the temporal proximity of other acts evidence; rather, this issue is determined on a case-by-case basis." *Taylor v. State*, 358 Ga. App. 773, 781 (2) (a) (ii) (856 SE2d 368) (2021). Here, there was a time span of approximately nine years between the prior offense in April 2012 and the current crimes in February 2021, and we have determined that similar time spans were not so remote as to erode the probative value

of the prior conviction. See *Hargrove*, 361 Ga. App. at 117 (2) (c) (ii) (concluding that "ten- and eight-year intervals between [the defendant's] other acts and the crimes charged . . . were not too remote to erode the probative value of the prior convictions") (citations and punctuation omitted); *Burgess*, 349 Ga. App. at 643 (3) (concluding that time span of approximately 12 years between the prior and current crimes was not so remote as to deprive the prior crime of its probity); *Gunn,* 342 Ga. App. at 621-622 (1) (concluding that defendant's 11-year old conviction for possession of cocaine with intent to distribute was not too remote to destroy its probative value).

Lastly, we note that any prejudicial impact of the former conviction was mitigated "when the trial court gave the jury specific instructions about the limited purpose of the evidence." *McWilliams v. State*, 304 Ga. 502, 511 (3) (820 SE2d 33) (2018). And "because the specific details of the prior crime were not disclosed, the potential for confusion concerning which crime [Ashley] was on trial for was minimized." *Burgess*, 349 Ga. App. at 643 (3).

For the foregoing reasons, the trial court did not abuse its discretion in admitting evidence of Ashley's prior conviction for possession of methamphetamine

with intent to distribute pursuant to Rule 404 (b). Ashley thus has failed to show that he was entitled to a new trial based on the admission of that prior conviction.

4. In a related claim of error, Ashley appears to contend that the trial court erred by admitting into evidence an unredacted version of his certified conviction for possession of methamphetamine with intent to distribute. The unredacted indictment and disposition sheet for that conviction listed other drug-related counts to which Ashley pled guilty or that were nolle prossed as part of the same plea.

Because Ashley did not object when the trial court allowed the certified prior conviction to be admitted into evidence and submitted to the jury without the aforementioned redactions, we review his claim only for plain error. See *Lofton v. State*, 309 Ga. 349, 358 (4) (846 SE2d 57) (2020) (concluding that failure to invoke ruling from trial court on request for redactions waived ordinary appellate review and resulted in plain error review). Thus, to prevail on his claim, Ashley

> must show that: (1) there was an error that he did not affirmatively waive; (2) the error was obvious; (3) the error affected his substantial rights, which means that he must demonstrate that the error likely affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial

25

> proceedings. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232)
> (2011). See also OCGA § 24-1-103 (d).

*Lofton*, 309 Ga. at 358-359 (4).

Pretermitting whether the trial court committed obvious error by allowing the State to introduce the certified prior conviction into evidence in unredacted form and whether Ashley affirmatively waived any objection to its introduction, we conclude that Ashley has failed to show that the alleged error likely affected the outcome of his trial. As previously noted, the State presented strong evidence of Ashley's guilt in the present case based on the testimony of the officers, the informant, and the forensic chemist. Moreover, when the State introduced the certified prior conviction into evidence, the State drew the jury's attention only to Ashley's prior conviction for possession of methamphetamine with intent to distribute and made no mention of the other unredacted counts. And the trial court mitigated any unfair prejudice by giving limiting instructions when the court records were introduced into evidence and again in its final charge. Under these circumstances, Ashley has failed to establish that the outcome of the trial likely would have been different if the court records had been redacted, particularly when his related, more prejudicial conviction for possession of

methamphetamine with intent to distribute was properly admitted into evidence. See

*Lofton*, 309 Ga. at 359 (4) (concluding that defendant failed to show that admission of the unredacted portions of his video-recorded police interview likely affected the outcome of his trial, given the strong independent evidence that the State presented of his guilt); *Taylor*, 358 Ga. App. at 782 (2) (b) (determining that defendant failed to show that trial court committed reversible error by not redacting portions of court records that listed other offenses, where the State made no mention of those other offenses in its case-in-chief and the trial court gave limiting instructions); *Riley v. State*, 319 Ga. App. 823, 827 (2) (c) (738 SE2d 659) (2013) (concluding that defendant failed to show that admission of unredacted conviction records likely affected the outcome of his trial, where the related, more prejudicial convictions included in the same records were properly admitted). Ashley thus has failed to show plain error.

5. "At least as to evidentiary issues, this Court must consider collectively the prejudicial effect, if any, of trial court errors[.]" (Citation and punctuation omitted.) *Allen v. State*, 310 Ga. 411, 417 (4) (851 SE2d 541) (2020). We conclude that in light of the strength of the evidence against Ashley, as well as for the additional reasons that we found no prejudice discussed supra in Divisions 2 and 4, "[i]t is not at all probable

that the collective effect of the assumed errors harmed [Ashley]." Id. at 418 (4). See

*Davenport v. State*, 309 Ga. 385, 391 (3) (846 SE2d 83) (2020) (concluding that the

cumulative effect of the presumed errors in admitting other acts evidence and hearsay

evidence did not collectively prejudice the defendant in light of the strength of the

evidence of his guilt and the fact that the hearsay evidence was cumulative of other

admissible evidence).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*